**HORSE SHOE LAND AND LIVESTOCK, INC., a Nebraska corporation, Squaw Mountain Cattle Company, a Wyoming corporation, Springer Jones, Donna Jones, Vera Springer Jones, Audra Louise Weitzel and Betty Jeanne Snell, Appellants (Defendants),**

v.

**The FEDERAL LAND BANK OF OMAHA, a Nebraska corporation, Appellee (Plaintiff).**

**No. 86–193.**

Supreme Court of Wyoming.

Aug. 10, 1987.

Thomas S. Smith of Smith, Stanfield & Scott, Laramie, for appellants (defendants).

Frank J. Jones of Jones & Weaver, P.C., Wheatland, for appellee (plaintiff).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

CARDINE, Justice.

This is a mortgage foreclosure action in which appellee Federal Land Bank of Omaha (Bank) seeks to foreclose a mortgage on a ranch owned by appellant Squaw Mountain Cattle Company (Squaw Mountain). The district court entered partial summary judgment in favor of the Bank on its foreclosure claims but did not rule on various counterclaims asserted by appellants. The issues raised on appeal are whether there existed genuine issues of material fact preventing partial summary judgment and whether the trial court erred by vesting title to 946 shares of Two Bar-Muleshoe Water Company stock in appellee.

We reverse the district court's determination under Rule 54(b), W.R.C.P., that there was no just reason for delay, and we remand for proceedings consistent with this opinion.

## FACTS

Appellant Squaw Mountain is a ranching enterprise owned by individual appellants Springer Jones, Donna Jones, Vera Springer Jones, Audra Louise Weitzel and Betty Jeanne Snell. In January of 1980, Horse Shoe Land and Livestock, Inc., the predecessor corporation of Squaw Mountain, acquired the Two-Bar Ranch near Wheatland, Wyoming. In order to stock and operate the ranch and to refinance a previously existing short-term loan, appellants sought to borrow $2.4 million. Appellant Springer Jones contacted several lending institutions, and three lenders expressed an interest in making the loan. According to Mr. Jones, he ultimately chose to borrow from the Federal Land Bank because the Bank, in oral discussions, offered him the following terms:

> "[I]t offered me an open line of credit to the extent of 2.4 million dollars which I could pay back and re-borrow on a flexible basis as the need arose and without the burden of installment payments. The loan would be in effect for 5 years after which it would be re-evaluated and continued as an open-end loan and/or amortized as a fixed rate loan to be paid in installments."

On the basis of these alleged representations, Mr. Jones decided to forego financing with the other lenders. On May 2, 1980, the Bank informed Mr. Jones that the loan had been approved in the amount of $2.2 million at a variable interest rate of 10% with annual payments of $228,118 to be made on January 1st of each year. As a condition of approval, the Bank required that appellants use $110,000 of the loan funds to purchase stock in the Bank.

Although these terms were different from the terms that Mr. Jones had orally discussed with representatives of the Bank, he accepted the loan because of his need to pay off the short-term interim loan and his desire to begin operations for the summer of 1980. The note and mortgage were executed on June 6, 1980. By that time, the interest rate had risen to 11%, which increased the annual payment to $248,446. On June 13, 1980 appellants executed a collateral assignment of 946 shares of Two-Bar Muleshoe Water Company stock as additional collateral for the loan. On May 20, 1981, Squaw Mountain assumed the obligations of Horse Shoe Land and Livestock under the promissory note and mortgage.

Appellants' first act of default occurred when they failed to pay irrigation district assessments on the ranch for 1983. In 1984 and 1985 appellants paid neither irrigation district assessments nor real estate taxes on the ranch. Appellants then failed to make the annual installment payments on January 1, 1985 and January 1, 1986. On January 30, 1986, the Bank filed a complaint seeking judgment on the note, a decree of foreclosure, and attorney fees. The Bank also sought an order providing that it was the owner of the 946 shares of stock which appellants had pledged as additional security for the loan.

Appellants asserted the following defenses: failure to state a claim upon which relief could be granted, equitable estoppel, illegality, unclean hands, waiver, negligence, fraud, conspiracy to cause default, breach of oral contract to lend money, failure of conditions precedent, and laches. In addition, appellants advanced the following counterclaims: fraud, breach of fiduciary duty, negligence, breach of contract and bad faith.

The Bank moved for summary judgment on its claims. In support of its motion, the Bank filed affidavits and documents establishing the existence and terms of the loan and appellants' default. In response, Springer Jones filed an affidavit to support appellants' defenses and counterclaims.

Finding no genuine issue of material fact regarding the Bank's claims, the court entered partial summary judgment against Squaw Mountain and Springer Jones in the amount of $2,776,619.42. The court also ordered foreclosure on the ranch, vested ownership of the 946 shares of Two-Bar Muleshoe Water Company stock in the Bank, and awarded the Bank $25,000 in attorney fees. Appellants' counterclaims were unaffected by the partial summary judgment.

Upon appellants' motion to alter or amend the judgment, the court entered a modified partial summary judgment nunc pro tunc which contained a Rule 54(b), W.R.C.P. certification and delayed the determination of attorney fees until the completion of the foreclosure action. Appellants now appeal from the partial summary judgment nunc pro tunc, contending that genuine issues of material fact existed with regard to its defenses to the Bank's claims. Appellants also contend that the district court erred in ordering that ownership of the stock be vested in the Bank.

## SUMMARY JUDGMENT

■ Appellants raised eleven separate defenses to the Bank's claims as set forth in its complaint. By entering partial summary judgment, the district court apparently rejected all eleven defenses. The partial summary judgment merely contains the bare conclusion that

> "[t]here is no genuine issue as to any material facts as to the allegations contained in Plaintiffs' Complaint * * *."

Ordinarily we will review a summary judgment in the absence of specific determinations relative to the absence of material facts as to each defense raised below. The numerous defenses raised in this case, however, involve complex legal issues and newly emerging theories which should be adequately addressed at the district court level before any meaningful review can be undertaken in this court. Summary judgment is not to be used as a means for passing difficult questions of law onto this court for resolution with an inadequate record. *Weaver v. Blue Cross-Blue Shield of Wyoming*, Wyo., 609 P.2d 984 (1980).

■ We are also troubled by the fact that the district court ostensibly rejected appellants' defenses while allowing appellants to proceed with their counterclaims, some of which are identical to the defenses the court rejected. The record contains no explanation for this inconsistency, which may present problems when appellants proceed to trial on their counterclaims.

We have repeatedly stated that despite an express determination by the trial court that there is no just reason for delay, this court will not consider piecemeal appeals. *Molle v. Iberlin Ranch*, Wyo., 614 P.2d 1339 (1980); *Mott v. England*, Wyo., 604 P.2d 560 (1979); *Butts v. Gierse*, Wyo., 573 P.2d 1365 (1978). In the interest of judicial economy, we conclude that this case should be fully decided in the district court before an appeal is taken to this court. Accordingly, we dismiss the appeal.

Because the appeal is dismissed, we will not address appellants' argument that the district court erred in vesting ownership of appellants' water company stock in the Bank. We strongly suggest, however, that the district court reconsider this portion of the judgment, as we have serious doubts concerning the propriety of this method of disposing of the stock shares.

Pursuant to Rule 1.02, W.R.A.P., the appeal is dismissed on the court's own motion.

BROWN, C.J., filed a dissenting opinion.

BROWN, Chief Justice, dissenting.

In this case I have no reason to believe that appellant's counterclaims are not good faith claims. However, the majority opinion invites the filing of numerous counterclaims in foreclosure proceedings. A mortgagor in default may file a multitude of spurious counterclaims, injecting jury issues into the proceedings, and thus forestall foreclosure for years.

I would affirm.