2001 WY 97

Kenneth L. HOFF, Appellant (Plaintiff),

v.

CITY OF CASPER–NATRONA COUNTY HEALTH DEPARTMENT, Appellee (Defendant).

No. 00–54.

Supreme Court of Wyoming.

Oct. 17, 2001.*

---

\* This case was originally assigned to Justice Thomas on September 22, 2000, for the rendering of a proffered majority opinion. The case was reassigned to Justice Golden on February 5, 2001.

**100**

Representing Appellant: Rex O. Arney and B.J. Baker of Brown, Drew & Massey, LLP, Casper, WY. Argument by Mr. Arney.

Representing Appellee: Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper, WY.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

GOLDEN, Justice.

[¶ 1] In this appeal a terminated public employee asks this Court to reverse the district court's summary judgment which ruled that (1) his tort claims of breach of the implied covenant of good faith and fair dealing and retaliatory termination in violation of public policy do not escape the immunity bar of the Wyoming Governmental Claims Act; and (2) a written document signed by him which acknowledges that his public employer's personnel rules are not a contract is a legally sufficient disclaimer. We affirm.

**ISSUES**

[¶ 2] Hoff presents the following issues for our review:

1. Does public policy prevent a public agency from firing a competent dedicated public employee because the employee was properly performing his duties to protect the public, in order to placate influential interests who did not want the employee to properly perform his duties?

2. Is it error for a district court to grant summary judgment on behalf of an em-ployer holding that an employee handbook did not create an implied contract of employment, in a situation where the employee handbook is ambiguous, the handbook contains clear provisions for the protection of employees, and there is testimony from both parties that a contract of employment was intended to be and was created?

3. Is a public agency immune from a claim for breach of an implied covenant of good faith and fair dealing asserted by a discharged employee if there is evidence that there was a special relationship of trust and reliance between the employee and the agency?

The Health Department presents this statement of the issues:

1. Does a public agency have a right to replace a director in a policy making position at the start of a new term of the board?

2. Although hired without benefit of any employment manual, was there an implied contract of employment that prohibited the termination of the Director of Environmental Health?

3. Does Appellant fail to state a claim for breach of the implied covenant of fair dealing and violation of public policy as a matter of law?

4. Can a plaintiff overcome a properly supported motion for summary judgment with his own affidavit containing inadmissible hearsay and opinion testimony?

**FACTS**

[¶ 3] At summary judgment, the parties had stipulated to the following facts. Under our summary judgment standard, we view the facts in the light most favorable to the party opposing summary judgment drawing all inferences favorable to it.

[¶ 4] In 1985, the Health Officer of the Health Department hired Hoff as the Director of the Environmental Health Division. A Board of Directors consisting of five persons governs the Health Department. Two board members are appointed by the City of Casper, two board members by the Board of County Commissioners of Natrona County

(Commissioners); and the city and county recommend the fifth member's appointment. Each board member serves one five-year term. The terms are staggered. Therefore, a new term of the board begins July 1st of each year with the addition of a new member following the expiration of a prior board member's term.

[¶ 5] At the time Hoff was hired, the Board had not adopted a written personnel manual; however, Hoff believed that he worked under the Natrona County personnel manual in effect at the time. In December of 1988, the Board adopted the county's personnel policy manual and modified it from time to time. In 1989, Hoff was appointed the interim administrator for the Health Department and served until 1990.

[¶ 6] In 1991, a Health Department committee, of which Hoff was chairman, was formed to propose a new personnel manual. The committee reviewed personnel manuals from other agencies and compiled provisions for consideration by the Board. After the city and county attorney reviewed the proposed manual, the Board adopted it at a regularly scheduled meeting on April 10, 1991. The manual is dated June 12, 1991. Thereafter, the Board modified various policies contained in the manual. The manual contained provisions regarding an assistant director. In addition, the manual contained language regarding at-will employment. However, this language was not separate or conspicuous. The manual contained language making a distinction between a permanent and a probationary employee. It contained a progressive step discipline system.

[¶ 7] In July 1991 Hoff signed a separate acknowledgement that the personnel rules and regulations in the manual were intended to give guidance and to establish fair and consistent personnel practices affecting employees but were not a contract of employment. The committee did not prepare this document. After the adoption of the 1991 manual, Hoff acted as Assistant Director of the Health Department while remaining Director of the Environmental Health Division.

[¶ 8] In 1996 the Commissioners made a significant cut in the funding of the Health Department for fiscal year 1996–1997. The cut in funding was followed by a subsequent reduction in funding the following fiscal year. The Commissioners appointed P.J. Gulley to the Board. Gulley is a restaurant owner in Casper, and in November, 1995, his restaurant received a low health inspection score, and the score was printed in the local newspaper. In January 1997 another business owner who had been required to make adjustments in her business following a health inspection by Hoff worked with one commissioner and arranged a meeting with city officials, county officials, members of the Board and restaurant owners. At the meeting, complaints were aired regarding the Environmental Health Division. Employees of the Environmental Health Division were not invited to attend.

[¶ 9] The Board performed a self-audit to consider various options it believed were available to remedy the apparent conflict between the Health Department and the Commissioners. This document was distributed to the Health Department employees for their input. On March 12, 1997, the Board proposed the adoption of resolutions to modify personnel rules and regulations and adopted them on May 14, 1997. The modifications applied only to new hires. At the meeting, the Board also indicated its intent to make the rules and regulations applicable to existing employees upon the new term of the Board.

[¶ 10] On July 23, 1997, at the first regularly scheduled meeting of the new Board, the Board adopted the new personnel policies to apply to both new and existing employees effective September 10, 1997. The Board determined to give each employee $500 as consideration for accepting the new policies. The Board determined that any employee who did not accept the $500 would be advised he or she would be terminated and paid two weeks severance pay. On September 30, 1997, Hoff was issued and later cashed the check for $500.

[¶ 11] In November 1997 the Board did not renew the Health Officer's contract and hired a new director to oversee all departments. On June 19, 1998, the new director recommended that the Board terminate

Hoff's employment because differences with philosophy and approach to environmental health did not match well with future developments. On July 21, 1998, Hoff and his attorney attended a board hearing. The Board requested comments from the director, Hoff, and his attorney. On July 22, 1998, at the first regularly scheduled board meeting for the new term, the Board decided to end Hoff's employment effective October 31, 1998. Hoff was placed on administrative leave with full pay and benefits. The Board stated that the termination was not for disciplinary reasons but was part of the Board's desire to take the department in a new direction.

[¶ 12]   On December 31, 1998, Hoff filed suit alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of public policy.   In summary judgment proceedings, the district court granted the Health Department's motion for summary judgment on all claims, ruling that (1) the Wyoming Governmental Claims Act immunizes the Health Department against those tort claims asserted by Hoff because the Wyoming Governmental Claims Act does not expressly recognize them, and (2) the written document signed by Hoff which acknowledges that the Health Department's personnel rules are not a contract is a legally sufficient disclaimer.   This appeal followed.

## DISCUSSION

### Standard of Review

[¶ 13]   Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1250 (Wyo.1997); W.R.C.P. 56(c).   A fact is material if it establishes or refutes an essential element of a claim or defense. *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo.2000).   In evaluating summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994).

### Legally Sufficient Disclaimer

[¶ 14]   Hoff stipulates that he was an at-will employee before 1991 but claims that the 1991 manual is an implied contract permitting discharge only for cause, and further argues that the disclaimer he signed in 1991 was ineffective because it was ambiguous. He argues that modifications of the manual adopted by the Board in 1997 cannot be applied to him because they constitute modifications from for-cause discharge to at-will employment that were not supported by proper consideration.   Finally, he argues that the new board cannot terminate an implied for-cause employment contract created by agency personnel rules and regulations under *Mariano & Associates v. Sublette County Comm'rs*, 737 P.2d 323, 329 (Wyo. 1987),[1] and its progeny.

1.  Subject to several qualifications, *Mariano* ruled that public policy required establishing the rule that:

> [A]ny contract with a unit of government of the state of Wyoming which extends beyond the term of office of the governmental decisionmakers, e.g. generally the first Monday of January of odd numbered years, can be subject to challenge if, in consideration of the facts and circumstances, the necessity and benefit to the governmental unit did not justify the extended term when the agreement was made. In reasoning, we generally follow the principal case, *Plant Food Co. v. City of Charlotte*, 214 N.C. 518, 199 S.E. 712 (1938), involving a contract to remove sludge where the court stated:
>> "It is not to be supposed that because the general subject may belong to the field of governmental powers no detail of administration may be carried out by contract, or that such contract must be completed within the term of the contracting council. The true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired. It is obvious that a too rigid adherence to the principle would leave the town council nursing a mere theory,—in the possession of an important governmental power without practical means for its exercise, and unable to take any important public work, since no concern would equip itself and undertake the project when the incoming administration, the product perhaps of political accident, might repudiate the contract at will during its performance." *Id.* at 714.

[¶ 15] The Health Department responds with several arguments in addition to its contention that the disclaimer is effective. It first claims that the Health Department, as a public entity, is free to change directors in policy-making positions with the new term of a board; secondly, the board is free to adopt new contracts at a new term, and, therefore, it was entitled to adopt a manual of new personnel rules and regulations in 1997 that undisputedly created an at-will employment contract; and finally, in the alternative to these arguments, contends that Hoff's acceptance of the $500 check suffices as sufficient consideration to bind him to the 1997 manual.

[¶ 16] Our review indicates that the separate acknowledgement signed by Hoff in 1991 effectively established his employment status as at-will, and we need not consider any issues arising from the 1997 Board actions. The disclaimer signed by Hoff stated, in pertinent part:

> I, Kenneth L. Hoff, understand that the City of Casper–Natrona County Health Department Personnel Rules and Regulations is *NOT* a contract of employment, but is intended to give guidance and to establish fair and consistent personnel practices affecting employees.

While conceding that the separately signed disclaimer is legally conspicuous, Hoff contends that a declaration that the rules are not a contract but "establish fair and consistent personnel practices" is ambiguous and, therefore, legally insufficient. "Normally, the construction and interpretation of a contract is for the court as a matter of law. If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact." *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1257 (Wyo. 1993).

[¶ 17] Hoff contends that the wording of this disclaimer is most similar to the disclaimer in *Sanchez*. We recently discussed *Sanchez* and noted:

> Notably missing from the disclaimer language … was a statement that the employer retained the power to fire an employee with or without good cause. *Id.* at 1259. Because this was a straightforward termination case involving the basic question of whether or not the employer could terminate with or without cause, the court determined that the disclaimer language "does not tell the employee what he needs to know." *Id.*

*Bouwens v. Centrilift*, 974 P.2d 941, 945 (Wyo.1999). Like this case, the issue in *Bouwens* was the clarity of a disclaimer, and there we adopted a contract formation analysis to decide if a contract had been formed by mutual assent. *Id.* at 946–47. Of concern here is whether Hoff could reasonably believe that the Health Department intended to make it legally bound to the provisions in the manual. *Bouwens* stated that the easiest way for a party to make clear an intention not to be legally bound is to say so. *Id.* at 947. The Health Department made clear its intention not to be legally bound by stating in a separately acknowledged disclaimer that the personnel rules and regulations were not a contract.

*Torts for Violations of Public Policy and Breach of Implied Covenant of Good Faith and Fair Dealing*

[¶ 18] Generally in Wyoming, in the context of private employment termination litigation, only contract remedies are available to provide relief for wrongful employment terminations, and tort remedies are rarely available. For an at-will employee, a breach of contract action is not available, and the only tort actions available to date are breach of the implied covenant of good faith and fair dealing which was recognized in *Wilder*, 868 P.2d at 221; intentional infliction of emotional distress recognized in *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1065–66 (Wyo.1986); and, as recognized in *Griess v. Consolidated Freightways Corp.*, 776 P.2d 752, 754 (Wyo.1989), and *Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 284 (Wyo. 1985), retaliatory termination which violates the State's public policy when no other remedy is available. *Townsend v. Living Centers Rocky Mountain, Inc.*, 947 P.2d 1297, 1299 (Wyo.1997).

[¶ 19] Hoff, a public employee, seeks trial on the torts of retaliatory termination and breach of the implied covenant of good faith and fair dealing. The Health Department, a governmental entity, seeks affirmance of summary judgment either on grounds of immunity under the Wyoming Governmental Claims Act or on the merits of the claims. In reply, Hoff asserts that immunity was not a bar to a remand for trial on this tort issue in *Jewell v. North Big Horn Hosp. Dist.*, 953 P.2d 135, 139–40 (Wyo.1998).

[¶ 20] *Jewell* reversed summary judgment in favor of the employer hospital district and permitted a hospital employee to proceed to trial to determine whether her employment contract was at-will and whether her employer was liable for the tort of breach of implied covenant of good faith and fair dealing. Although Jewell's hospital employer was a governmental agency generally entitled to tort immunity unless specifically excepted under the Wyoming Governmental Claims Act, the parties did not raise the immunity issue on this particular claim, and this Court did not address it. *Pickle v. Board of County Comm'rs of County of Platte*, 764 P.2d 262, 264 (Wyo.1988) (immunity under the Wyoming Governmental Claims Act is an affirmative defense and not jurisdictional, and must be raised by answer or it is waived.). Similarly, in *Anderson v. South Lincoln Special Cemetery Dist.*, 972 P.2d 136 (Wyo.1999), and *Dubrowski v. State ex rel. Wyoming Liquor Comm'n* 1 P.3d 631 (Wyo.2000), we resolved the issue on the merits without addressing the issue of immunity. Although the Health Department did not assert immunity as an affirmative defense in either its answer to Hoff's complaint or its summary judgment motion, it apparently was raised at some point because the issue was addressed in the district court's decision letter. *Pickle*, 764 P.2d at 264 (finding no prejudice in raising the affirmative defense by summary judgment). We now address the immunity issue.

[¶ 21] Hoff asserts that the district court erred on two fronts in granting summary judgment on his two tort claims. On the first front, he contends that the district court erred in its conclusion of law that sovereign immunity under the Wyoming Governmental Claims Act bars the claims. On the second front, he contends the district court erred when it ruled that, even if immunity does not bar the claims, no genuine issues of material fact exist about the factual basis for his termination. If we affirm the district court on the first front, we need not address the second.

[¶ 22] We have carefully considered the district court's straightforward analysis of and the parties' thoughtful presentations on the sovereign immunity question. For the reasons that follow, we hold that Hoff's tort claims are barred by the pertinent provisions of the Wyoming Governmental Claims Act, Wyo. Stat. Ann. § 1–39–101 through 121 (LexisNexis 2001). We note first that which Hoff does not contend. He does not contend that the Health Department is not a governmental entity covered by the Act; a provision of the Act expressly waives immunity for the subject torts; or the Act is infirm. Instead, he asks this Court to create judicially an exception to the legislature's declaration that "[a] governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for *any tort* except as provided by W.S. 1–39–105 through 1–39–112 ...." Wyo. Stat. Ann. § 1–39–104(a) (LexisNexis 2001) (emphasis added).

[¶ 23] Hoff relies on *Leonard v. Converse County School Dist. No. 2*, 788 P.2d 1119 (Wyo.1990), but that case is of no help. As we understand that case, Leonard performed counseling duties as an initial contract teacher, as that position is defined by state law. When the school board did not offer her a contract as a continuing contract teacher, as that position is defined by state law, she filed an action against the school district, a governmental entity, in which she sought reinstatement, money damages, and attorney's fees based upon several different legal theories, including the tort theories of breach of the implied covenant of good faith and fair dealing and violation of public policy. On appeal from a summary judgment against her on all legal theories, she asked this Court to adopt and apply the two tort theories to her situation. In that regard, she main-

tained that the school district's decision not to offer her a contract as a continuing contract teacher was based upon her devoting substantial amounts of time reporting suspected child abuse and neglect incidents and cooperating with law enforcement authorities and child protection agencies in such matters. *Id.* at 1123. This Court rejected Leonard's invitation to adopt and apply these two tort theories in the initial contract teacher context. *Id.* at 1122. This Court reasoned:

> The adoption of these theories would alter the tenure status of initial contract teachers defined in Wyo. Stat. § 21–7–109 (1977).... The power to modify that status belongs to the legislature.

*Id.*

[¶ 24] Leonard had also sought relief under federal law, namely, 42 U.S.C. § 1983 (1982), alleging that her termination was based upon the constitutionally impermissible grounds of her marital status, her residency, her personal life, and her reporting of incest cases to government agencies. *Id.* at 1123. This Court upheld summary judgment on the § 1983 theory because Leonard's summary judgment materials were "merely speculative and conclusory." *Id.*

[¶ 25] Neither Leonard nor the school district raised governmental immunity, and this Court did not discuss it. More importantly, nothing this Court said in *Leonard* suggests, let alone stands for the proposition, that a governmental entity's termination of a public employee in breach of the implied good faith covenant or public policy implicates that employee's constitutional rights. Hoff's contention to the contrary is not well-founded.

[¶ 26] Hoff also seeks support for his position in *VanLente v. University of Wyoming Research Corp.*, 975 P.2d 594 (Wyo. 1999), but it, too, is of no help. Although the employer's name suggests otherwise, VanLente's employer was a private, not governmental, entity; and VanLente was a private employee. An at-will employee, VanLente was terminated from his employment when his employer implemented a reduction-in-force because of budgetary constraints. *Id.* at 596. After VanLente's efforts at recourse failed before a federal agency and a federal

court, he sought relief in state court, asserting both tort and contract claims for breach of the implied good faith covenant. *Id.* at 596–97. The district court granted the employer's motion for summary judgment, and this Court affirmed. *Id.* at 598–99. Importantly for our purposes here, VanLente "specifically disavowed" a public policy tort claim. *Id.* at 597. Obviously, *VanLente* is inapposite.

[¶ 27] The Claims Act creates statutory exceptions to sovereign immunity. Wyo. Stat. Ann. § 1–39–104(a) (LexisNexis 2001) provides:

> (a) A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112 and limited by W.S. 1–39–121

Under the Act, the Health Department is a governmental entity. Wyo. Stat. Ann. § 1–39–103 (LexisNexis 2001). Accordingly, sovereign immunity bars recovery unless the tort is one of those enumerated exceptions in the Act or the board members acted outside the scope of their duties. *Veile v. Board of County Comm'rs of Washakie County*, 860 P.2d 1174, 1177 (Wyo.1993). A tort claim not specifically authorized under the Act is barred. *Id.* (citing *Worden v. Village Homes*, 821 P.2d 1291, 1295 (Wyo.1991)). The enumerated exceptions to sovereign immunity permit actions premised on negligent operation of certain governmental vehicles, § 1–39–105; negligent operation or maintenance of certain governmental facilities, § 1–39–106; negligent operation of airports, § 1–39–107; negligent operation of public utilities and services, § 1–39–108; negligent operation of public hospitals, § 1–39–109; negligent performance of health care providers employed by governmental entities, § 1–39–110; and tortious acts of peace officers, § 1–39–112.

[¶ 28] The torts of retaliatory termination in violation of public policy and breach of the implied good faith covenant are not specifically enumerated in the Act. Insofar as Hoff has alleged that the Health Department terminated his employment in violation of public

policy, it is arguable whether he has alleged that the Board members were acting beyond the scope of their duties; however, he does not argue the point. Because he has limited his argument to whether torts arising from a public employment relationship are barred under the Act, we too limit our review to that point.

[¶ 29] Of relevance is Wyo. Stat. Ann. § 1–39–119 (LexisNexis 2001), which states:

> The provisions of this act shall not affect any provision of law, regulation or agreement governing employer-employee relationships.

We have previously interpreted this language and held that it "does not serve to except claims which have their genesis in tort even though they arise out of an employment relationship. Instead this section indicates that the provisions of the statute are supplementary to others that may be provided by law, regulation or other agreement relating to employer-employee relationships. If the tort action is brought, and it does arise out of the employment relationship, we conclude that the claims procedure of this statute must be followed." *Bd. of Trustees of Univ. of Wyoming v. Bell,* 662 P.2d 410, 414–15 (Wyo. 1983). We extended *Bell's* holding to contract claims in *Allen v. Lucero,* 925 P.2d 228, 230 (Wyo.1996).

[¶ 30] Hoff contends that certain language in § 1–39–104(a), following the declaration of immunity from liability for any tort except those expressly enumerated in sections 105 through 112, is sufficiently broad that it can be interpreted to waive immunity for purposes of the implied covenant tort arising from an employment relationship to which a governmental entity is a party. In pertinent part that statutory language reads "[a]ny immunity in actions based on a contract entered into by a governmental entity is waived except to the extent provided by the contract...." Wyo. Stat. Ann. § 1–39–104(a) (LexisNexis 2001). Conceding that the implied covenant action is treated as a tort action in Wyoming, Hoff observes it is based on an employment contract. *Wilder,* 868 P.2d at 220–21. The Health Department counters that Hoff provides no support for his conclusion that this statutory language

does not bar the implied covenant tort action. Inexplicably, neither party invokes this Court's well-known and frequently applied rules of statutory interpretation. *See, e.g., Jones v. State of Wyoming Dep't of Health,* 2001 WY 28, ¶¶ 12–15, 18 P.3d 1189, ¶¶ 12–15 (Wyo.2001). Be that as it may, this Court is not persuaded by Hoff's abbreviated and perfunctory argument. For one thing, the subject language relied on by Hoff was added in 1980. 1980 Wyo. Sess. Laws ch. 46, § 1. At that time, this Court had not recognized the implied covenant tort; indeed, it did not until 1994 in *Wilder,* 868 P.2d at 220. This Court presumes "that the legislature enacts legislation with full knowledge of existing law and with reference to other statutes and decisions of the courts. Such legislation should, therefore, be construed in a way that creates a consistency and harmony within the existing law." *Capwell v. State,* 686 P.2d 1148, 1152 (Wyo.1984). Because the implied covenant tort did not exist in Wyoming in 1980, and the legislature is presumed to have known that, we can only conclude that when the legislature added the subject language in 1980, it did not have in mind the implied covenant tort as an action "based on a contract." For another thing, the legislature has used plain language in subsection 104(a) to deal with tort actions in the first sentence and contract actions in the next. Those are commonly understood terms, each having distinct elements and remedies. Although the employment relationship is based on contract and provides the setting within which the parties interact with each other, it is that interaction which truly forms the basis of the tort claim on which the employee seeks a remedy. It is more accurate to say that the tort claim arises from the employment contract setting, but it is based on alleged tortious conduct, not on the contract.

[¶ 31] We also note one more consideration. At the time the legislature enacted the Act in 1979, neither of the subject torts had been recognized in the private employment relationship context. *Allen* in 1985 and *Griess* in 1989 recognized the public policy tort in limited circumstances. *Wilder* in 1994 recognized the implied covenant tort if certain requirements were satisfied. The legis-

lature has not moved to add these torts to the list of statutorily enumerated exceptions to immunity. It is not as if the legislature is unaware of these kinds of employment-related tort claims. Although neither the district court nor the parties directed our attention to it, from our own research we know that the legislature has enacted the State Government Fraud Reduction Act, effective July 1, 1996, but not after July 1, 2002. Wyo. Stat. Ann. § 9–11–101 through 104 (LexisNexis 2001). This Act expressly authorizes a state employee, as defined in the Act, to bring a civil action and pursue a limited recovery if he or she has been discharged, disciplined, or retaliated against by a state employer, as defined in the Act, because of (1) reporting fraud, waste, or gross management in a state government office; (2) reporting a violation of a state or federal law, regulation, code, or rule; (3) reporting a condition or practice that would put at risk the health or safety of any individual; (4) participating in any investigation, hearing, or inquiry concerning an issue under this Act; (5) refusing to carry out a directive beyond the terms and scope of his or her employment which would expose any individual to a condition likely to cause serious injury or death, after being unsuccessful in obtaining the employer's correction of the dangerous condition. Wyo. Stat. Ann. § 9–11–101 through 104 (LexisNexis 2001). Given the statutory definitions of "employee," "State," and "political subdivision" contained in the Act, Wyo. Stat. Ann. § 9–11–102(a)(i), (ii), and (iii), this Act does not apply to Hoff and the Health Department. But the important point is, the legislature could have made it applicable to them, but chose not to.

[¶ 32] Because these issues relate directly to matters concerning governmental liability and governmental employees as to which the legislature has been particularly active, we must leave the debate about and resolution of the difficult policy issues to the democratic process which is the domain of the people and their representatives in the legislative department.[2] The contract exclusion lan-

guage of Wyo. Stat. Ann. § 1–39–104(a) is inapplicable as it applies only to a governmental entity's contractual agreement to pay and not to a tort action. Similarly, Wyo. Stat. Ann. § 1–39–119 does not enumerate these two subject torts and cannot serve as an exception to immunity. The legislature has clearly stated in plain language in the Act the public policy that a covered governmental entity is liable for only those torts expressly recognized in that Act. Any invitation to add a particular tort to the statutory list must be addressed to that body.

[¶ 33] The district court's summary judgment order is affirmed.

2. Courts in other jurisdictions have also exercised restraint in this area of the law. *See, e.g., Koch v. Bd. of Cty. Comm'rs of Costilla Cty., Colorado,* 774 F.Supp. 1275 (D.Colo.1991); *Faust v. Commonwealth of Pennsylvania, Dep't of*

*Revenue,* 140 Pa.Cmwlth. 389, 592 A.2d 835 (1991), *allocatur denied,* 530 Pa. 647, 607 A.2d 257 (Pa.1992); *Burgess v. Lewis & Clark City-County Bd. of Health,* 244 Mont. 275, 796 P.2d 1079 (1990).