# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 3

OCTOBER TERM, A.D. 2013

*January 7, 2014*

CAMPBELL COUNTY MEMORIAL HOSPITAL,

Appellant
(Defendant),

v.

S-13-0040

JAIME A. WILLIAMS PFEIFLE and JOSH PFEIFLE,

Appellees
(Plaintiffs).

*Appeal from the District Court of Campbell County*
*The Honorable Dan R. Price II, Judge*

*Representing Appellant:*
> Billie LM Addleman; and Kara L. Ellsbury of Hirst Applegate, LLP, Cheyenne, WY. Argument by Mr. Addleman.

*Representing Appellee:*
> R. Daniel Fleck and Larissa A. McCalla of The Spence Law Firm, LLC, Jackson, WY; and Jeremy D. Michaels of Michaels & Michaels, PC, Gillette, WY. Argument by Mr. Michaels.

*Before HILL, VOIGT\*, BURKE, and DAVIS, JJ., and SHARPE, D.J.*

*Justice Voigt retired effective January 3, 2014.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**SHARPE,** District Judge.

[¶1]  Campbell County Memorial Hospital ("the hospital") appeals from a district court order denying its motion for partial summary judgment in a medical malpractice action. The district court determined that a government hospital could be vicariously liable for acts of non-employees or independent contractors under the doctrine of ostensible agency.  The district court based its ruling on this Court's decision in *Sharsmith v. Hill,* 764 P.2d 667 (Wyo. 1988).  On appeal, the hospital contends the district court erred in its interpretation of *Sharsmith.*  The hospital asserts *Sharsmith* did not create an implied waiver of sovereign immunity under the Wyoming Governmental Claims Act.  We agree. We therefore reverse and remand for further proceedings consistent with this opinion.

## *ISSUES*

[¶2]  Appellant Campbell County Memorial Hospital presents the following issue for our consideration:

> Whether a governmental entity is liable for the negligence of a non-employee under the Wyoming Governmental Claims Act ("WGCA" or "Act").

Appellee Jamie Pfeifle restates the issues as follows:

> A.  Whether the Wyoming Governmental Claims Act applies to Campbell County Memorial Hospital because the hospital obtained liability insurance to cover these circumstances;
>
> B. Whether the Wyoming Governmental Claims Act's remedy provisions apply only to tort claims brought under specific provisions of the Act and do not in any way limit contract-based claims or remedies;
>
> C. Whether Certified Registered Nurse Anesthetist Amanda Phillips fits the Wyoming Governmental Claims Act's definition of public employee; and
>
> D.  Whether Campbell County Memorial Hospital is liable for Certified Registered Nurse Anesthetist Amanda Phillips' negligence because the hospital created the appearance that Phillips was the hospital's employee.

## *FACTS*

1

[¶3]   Campbell County Memorial Hospital ("the hospital") is a governmental entity in Gillette, Wyoming.  The hospital contracted with Northern Plains Anesthesia Associates, P.C. ("Anesthesia Associates") to provide anesthesia services for the hospital.  Amanda Phillips ("Phillips" or "Nurse Phillips") was a certified registered nurse anesthetist for Anesthesia Associates when the conduct in dispute occurred.

[¶4]   On September 24, 2008, Jamie Pfeifle ("Pfeifle") went to the hospital to have a baby.  Although she anticipated that the baby would be delivered after labor was induced, the attending obstetrician ordered a cesarean section.  In preparation for the cesarean section, Nurse Phillips attempted to administer spinal anesthesia to Pfeifle.  After the first attempt failed, she tried to administer anesthesia two more times.  Pfeifle claims she experienced severe pain and paresthesia during each procedure.  Pfeifle maintains that Nurse Phillips' repeated attempts to administer the anesthesia caused permanent disability and other damages.

[¶5]   After complying with the claim requirements of the Wyoming Governmental Claims Act ("WGCA" or "Act"), Jamie and her husband Josh filed this action on December 28, 2010.[1]  The Pfeifles' complaint alleged separate negligence claims against the hospital, Anesthesia Associates, Phillips, and another party.  Plaintiffs' complaint alleged that Nurse Phillips acted as an employee of Anesthesia Associates at the time of the spinal anesthesia procedures.  Alternatively, the complaint alleged Nurse Phillips acted as an employee or agent of the hospital, thereby making the hospital vicariously liable for Phillips' claimed negligence.  In their respective answers, the hospital, Anesthesia Associates and Nurse Phillips denied that Phillips acted as an employee of the hospital at the time of the alleged negligence.  Rather, the defendants asserted that Nurse Phillips was an employee of Anesthesia Associates.

[¶6]   On March 22, 2012, the hospital filed a motion for partial judgment on the pleadings pursuant to W.R.C.P. 12(c).  In support of its motion, the hospital relied on the answers filed by Phillips and Anesthesia Associates admitting that Phillips was an employee of Anesthesia Associates and not the hospital.  The hospital argued that it could only be held liable for acts of "public employees" under the WGCA and that the Act specifically excludes "independent contractors" from the definition of public employees.  Accordingly, the hospital argued it was entitled to judgment as a matter of law on the Pfeifles' claims asserting vicarious liability against the hospital for the alleged negligence of Phillips or Anesthesia Associates.

[¶7]   In their response to the hospital's motion, the Pfeifles argued that "[p]laintiffs' case against the hospital is based on ostensible, or apparent, agency [as] recognized by the Wyoming Supreme Court in *Sharsmith v. Hill* and common law."  The Pfeifles also asserted that Nurse Phillips was a "public employee" as defined by the WGCA.  Finally,

---

[1] Plaintiffs later dismissed Josh Pfeifle from the action on February 10, 2011.

2

the Pfeifles argued the WGCA did not provide immunity to the hospital because the hospital had obtained insurance that covered Phillips, and because the Pfeifles were intended third-party beneficiaries of the contract between the hospital and Anesthesia Associates. The district court issued an order converting the hospital's motion for partial judgment on the pleadings to a motion for partial summary judgment. *See* W.R.C.P. 12(c).

[¶8] After hearing oral arguments on the hospital's motion, the district court certified the following question to this Court: Does the doctrine of ostensible or apparent agency as announced in *Sharsmith* apply to all hospitals regardless of whether or not they are governmental entities that are protected by sovereign immunity and the requirements of the Wyoming Governmental Claims Act? This Court declined to answer the certified question on August 15, 2012, stating:

> This Court finds that it should decline to answer the question. It does not appear that the certified question "may be determinative of the cause" pending in district court. W.R.A.P. 11.01. Even if the Hospital is immune from suit, it appears that this suit can still go forward against the other defendants.

[¶9] On September 10, 2012, the district court issued its decision letter denying the hospital's motion for partial summary judgment. In so doing, the district court held that *Sharsmith* applies to cases involving government hospitals. The district court further found that the *Sharsmith* factors were satisfied in this case, and that the hospital could be vicariously liable for the actions of a non-employee under the doctrine of ostensible agency.

## STANDARD OF REVIEW

[¶10] W.R.C.P. 12(c) prescribes the standard for converting a motion for judgment on the pleadings to a motion for summary judgment.

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

W.R.C.P. 12 (c). Because the Pfeifles attached discovery documents to their brief in opposition to the hospital's motion, the district court properly converted the hospital's

motion to one for partial summary judgment. Accordingly, we apply a summary judgment standard of review.

[¶11] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 5, 185 P.3d 1259, 1261 (Wyo. 2008). When summary judgment involves a purely legal determination, we review *de novo* the trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.*, 2007 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo. 2007).

## DISCUSSION

[¶12] Before considering the merits of this appeal, we must first address a jurisdictional issue. The denial of a defendant's summary judgment motion is generally not a final appealable order. *Gilstrap v. June Eisele Warren Trust*, 2005 WY 21, ¶ 7, 106 P.3d 858, 861 (Wyo. 2005). This Court has recognized an exception to that rule, however, in cases involving the denial of a defendant's claim of qualified immunity. *Park County v. Cooney*, 845 P.2d 346, 349 (Wyo. 1992). In *State Dep't of Corr. v. Watts*, 2008 WY 19, ¶ 10, 177 P.3d 793, 796 (Wyo. 2008), we determined that the same rationale that favors an exception to the general rule in qualified immunity cases, also applies to summary judgment denials based on a claim of governmental immunity. We specifically held in *Watts* that "an order denying a summary judgment on a claim of governmental immunity is appealable and it is not necessary to grant discretionary review in such circumstances." *Id.* Based on *Watts,* we find that this Court has jurisdiction to hear the hospital's appeal.

[¶13] In analyzing the district court's denial of the hospital's motion, we note that the district court accepted the factual premise that Nurse Phillips acted as an employee of Anesthesia Associates, and not the hospital, when she administered the spinal anesthesia. The district court nevertheless determined that a governmental entity can be vicariously liable for the acts of non-employees or independent contractors based on the doctrine of ostensible agency. The district court based this decision solely on its reading of *Sharsmith.*

[¶14] In *Sharsmith,* this Court considered whether a hospital in Teton County (St. John's Hospital) could be vicariously liable for the alleged negligence of two non-employee pathologists who failed to diagnose a malignant tumor in the plaintiff's leg. This Court initially noted in *Sharsmith* that a hospital is generally liable only for the negligence of its employees, and not for the negligence of physicians who are independent contractors. *Id.*, 764 P.2d at 671. Relying on case law from other jurisdictions as well as the Restatements Second of Torts and Agency, however, this Court adopted the "apparent agency rule." That rule imposes vicarious liability against hospitals for the negligence of those practitioners who are the ostensible or apparent agents of the hospital "regardless of

4

whether they are employees or independent contractors." *Id.* at 672. We summarized the apparent agency rule in *Sharsmith* as follows:

> Where a hospital holds itself out to the public as providing a given service, *** and where the hospital enters into a contractual arrangement with one or more physicians to direct and provide the service, and where the patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment, the doctrine of respondeat superior applies and the hospital is vicariously liable for damages proximately resulting from the neglect, if any, of such physicians.

*Sharsmith*, 767 P.2d at 672 (quoting *Hardy v. Brantley,* 471 So. 2d 358, 371 (Miss. 1985)). *Sharsmith* did not discuss or address whether the hospital in that case was a governmental entity or a private hospital. Moreover, *Sharsmith* did not discuss the WGCA or the doctrine of sovereign immunity, and did not consider whether the Wyoming Legislature intended to waive sovereign immunity for acts of non-employees of a government hospital under the doctrine of apparent or ostensible agency.

[¶15] The district court in this case acknowledged that *Sharsmith* is silent on these salient issues but determined that *Sharsmith* nevertheless applies to this case. The district court explained its reasoning as follows:

> The court will find that the *Sharsmith* case applies in this situation. The main reason for the court's conclusion is that the hospital involved in *Sharsmith* is a government entity. *See Guier v. Teton County Hosp. Dist.,* 248 P.3d 623 (Wyo. 2011). Even though the Supreme Court did not address this fact in the *Sharsmith* decision this court finds that since both the hospital in this case and the hospital in *Sharsmith* are governmental entities that the same reasoning is applicable. Also, as far as a patient is concerned, there is no difference between a hospital that is a government entity and one that is not.

[¶16] To resolve this appeal, we must first determine whether the legislature, by enacting the WGCA, intended to expressly waive sovereign immunity for acts of non-employees of a government hospital under the doctrine of ostensible agency. We must also analyze whether our decision in *Sharsmith* interpreted the Act to waive sovereign immunity with regard to claims of ostensible or apparent agency. Because the district court assumed that our decision in *Sharsmith* resulted in a waiver of governmental

5

immunity, the starting point for our analysis requires a brief discussion of the doctrine of sovereign immunity and the historical underpinnings of the WGCA.

[¶17] There is perhaps no common law doctrine more time honored than the doctrine of sovereign immunity. As this Court noted in *Worthington v. State,* 598 P.2d 796, 801 (Wyo. 1979):

> There are few, if any, precedents or rules that have been recognized longer or followed with greater fidelity than the rule that was set out in the case of *Hjorth Royalty Company v. Trustees of University*, 30 Wyo. 309, 222 P. 9 (1924), which held that Art. 1, § 8, Wyoming Constitution, is not self-executing; that no suit can be maintained against the State until the legislature makes provision for such filing; and, that absent such consent, no suit or claim could be made against the State.

We acknowledged in *Worthington* that the doctrine of sovereign immunity has its "roots in the ancient common law of England which held 'The King can do no wrong' and hence could not be sued in any court of law." *Id.* at 803 (quoting *Perkins v. State,* 252 Ind. 549, 251 N.E.2d 30, 32 (1969)).

[¶18] In reality, of course, the King does "do wrong," but the right to seek redress for such wrong is determined by the policy and will of the legislative body. The constitution of the State of Wyoming embodies this very concept. "Suits may be brought against the state in such manner and in such courts as the legislature may by law direct." Wyo. Const. art. 1, § 8. Until 1979, the Wyoming Legislature had not directly addressed those circumstances in which lawsuits could be maintained against the State of Wyoming, so issues involving sovereign immunity were largely the province of the courts. *See, e.g., Oroz v. Board of County Comm'rs*, 575 P.2d 1155 (Wyo. 1978).

[¶19] In 1979, the Wyoming Legislature abrogated the common law of sovereign immunity in Wyoming, and established sovereign immunity as a legislative construct. *See* Wyo. Stat. Ann. §§ 1-39-101 to 1-39-121 (LexisNexis 2013). The Wyoming Legislature stated its purpose in enacting the WGCA as follows:

> (a) The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the Wyoming Supreme Court decision of *Oroz v. Board of County Commissioners*, 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the

6

inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the state, state revenues may only be expended upon legislative appropriation. This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers. This act is intended to retain any common law defenses which a defendant may have by virtue of decisions from this or other jurisdictions.

(b) In the case of the state, this act abolishes all judicially created categories such as "governmental" or "proprietary" functions and "discretionary" or "ministerial" acts previously used by the courts to determine immunity or liability. This act does not impose nor allow the imposition of strict liability for acts of governmental entities or public employees.

Wyo. Stat. Ann. § 1-39-102 (LexisNexis 2013). The Wyoming Legislature's purpose in enacting the WGCA is clear. The legislature sought to retain the common law principle that a governmental entity is generally immune from lawsuits, while acknowledging that fairness requires authorizing lawsuits against a governmental entity in certain statutorily defined situations. The legislature therefore created specific statutory exceptions to the general rule of sovereign immunity. The unambiguous language of § 1-39-104(a) supports this interpretation of the Act: "A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1-39-105 through W.S. 1-39-112 and limited by W.S. 1-39-121."

[¶20] Since 1979, this Court has consistently held that the WGCA is a "close-ended" tort claims act, which means a claim is barred unless it falls within one of the statutory exceptions. *Sawyer v. Sheridan*, 793 P.2d 476, 478 (Wyo. 1990); *City of Torrington v. Cottier*, 2006 WY 145, ¶ 7, 145 P.3d 1274, 1277 (Wyo. 2006); *Dept. of Corrections v. Watts*, 2008 WY 19, ¶ 14, 177 P.3d 793, 796-97 (Wyo. 2008); *Weber v. State,* 2011 WY 127, ¶ 11, 261 P.3d 225, 227 (Wyo. 2011); *DiFelici v. City of Lander*, 2013 WY 141, ¶ 8, 312 P.3d 816, 819 (Wyo. 2013).

[¶21] In this case, Pfeifle argues that her tort claim falls within the waiver of immunity found in §§ 1-39-109 and 1-39-110 of the Act. Section 1-39-109 provides an express waiver for "public employees" in the operation of any public hospital or in providing public outpatient care. Section 1-39-109 states:

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of *public employee*s while acting within the scope of their duties in the operation of any public hospital or in providing public outpatient health care.

Wyo. Stat. Ann. § 1-39-109 (LexisNexis 2013) (emphasis added).

[¶22] Section 1-39-110 of the Act, in turn, grants an express waiver of immunity for certain health care providers, including contract physicians and nurses providing services for state institutions and county jails. Section 1-39-110(a) states:

(a) A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of health care providers who are *employees of the governmental entity*, including contract physicians, physician assistants, nurses, optometrists and dentists who are providing a service for state institutions or county jails, while acting within the scope of their duties.

Wyo. Stat. Ann. § 1-39-110 (a) (LexisNexis 2013) (emphasis added).

[¶23] The term "public employee" as used in § 1-39-103 is defined within the Act as follows:

(iv) "Public employee":

(A) Means *any officer, employee or servant* of a governmental entity, including elected or appointed officials, peace officers and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation;

(B) *Does not include an independent contractor*, *except* as provided in subparagraphs (C) and (F) of this paragraph, or a judicial officer exercising the authority vested in him;

(C) Includes contract physicians, physician assistants, nurses, optometrists and dentists *in the course of providing contract services for state institutions or county jails*;

Wyo. Stat. Ann. § 1-39-103(a)(iv)(A-C) (LexisNexis 2013) (emphasis added).

[¶24] The term "employees of the governmental entity" as used in § 1-39-110 is not separately defined, but the term is included within the broader definition of "public employee" found in § 1-39-103(a)(iv)(A). When construing a statute, this Court must read the statute as a whole and give effect to every word, clause and sentence, and construe all parts of the statute *in pari materia*. *Johnson v. City of Laramie*, 2008 WY 73, ¶ 7, 187 P.3d 355, 357 (Wyo. 2008). The term "employees of a governmental entity" is therefore subject to the subsequent modifying language found in both §§ 1-39-103(a)(iv)(B) and 1-39-103(a)(iv)(C) for "public employees."

[¶25] Reading all the provisions of the Act *in pari materia*, as we must, we find that the plain meaning of "public employee" is clear. "Public employee" begins with the broad definition under the first subparagraph ("any officer, employee or servant of a governmental entity"). § 1-39-103(a)(iv)(A). The definition is restricted by the second subparagraph ("[d]oes not include an independent contractor, except as provided in subparagraph[] (C)"). § 1-39-103(a)(iv)(B). The definition is slightly extended by the third subsection ("Includes contract physicians, physician assistants, nurses, optometrists and dentists in the course of providing contract services for state institutions or county jails"). § 1-39-103(a)(iv)(C).

[¶26] Accordingly, for purposes of §§ 1-39-109 and 1-39-110, the only independent contractors that are considered "public employees" are the listed contractors providing health care services for state institutions and county jails. § 1-39-103(a)(iv)(C). The list of fourteen state institutions created by the legislature does not include any public hospital, except the Wyoming state hospital in Evanston. Wyo. Stat. Ann. § 25-1-201 (LexisNexis 2013). Campbell County Memorial Hospital is not listed and is clearly not a "state institution." Moreover, the hospital in this case is certainly not a county jail. If Phillips is indeed an employee of an independent contractor (as the district court assumed she was), then sovereign immunity has not been waived by either §§ 1-39-109 or 1-39-110.[2]

[¶27] Our conclusion that the WGCA does not provide an express waiver of sovereign immunity for non-employees of a governmental hospital does not end our analysis. The district court assumed the doctrine of ostensible agency announced in *Sharsmith* applies

---

[2] We note that the legislature's decision to exclude most independent contractors from the definition of "public employees" under the WGCA is perfectly consistent with the purposes of the Act. In promulgating the Act, the legislature recognized the unfairness of precluding a plaintiff's claim against a governmental entity in situations where the government provides services "not available through private parties." Wyo. Stat. Ann. § 1-39-102 (LexisNexis 2013). When an independent contractor or private party provides the services that injure the plaintiff, however, the plaintiff can maintain a direct cause of action against that private party unconstrained by the doctrine of sovereign immunity. The inequities that prompted the legislature to enact the WGCA simply do not apply when the plaintiff has a claim she can bring against the party that actually provided the services.

9

to all hospitals, including governmental entities. The district court based its conclusion on the fact that the hospital in *Sharsmith,* like the hospital here, was a governmental entity.[3] The district court therefore assumed that this Court's decision in *Sharsmith* establishes an implicit waiver of sovereign immunity against all hospitals whenever the hospital creates the appearance that an independent contractor is its agent. We disagree.

[¶28]     The district court correctly recognized that *Sharsmith* does not discuss either the Wyoming Governmental Claims Act or the doctrine of sovereign immunity. *Sharsmith* did not address whether the hospital in that case was a governmental entity, and did not discuss whether the legislature intended to waive sovereign immunity for claims against a governmental entity under the Act for acts of an ostensible agent. In the absence of any discussion or analysis of these important topics, it was error for the district court to rely on *Sharsmith* as waiving sovereign immunity in this case.

[¶29]     The decision whether or not to waive immunity for a governmental entity belongs to the Wyoming Legislature, not this Court. Wyo. Const. art. 1, § 8. If the legislature had intended to include liability for apparent or ostensible agents within a waiver of governmental immunity, it could have expressly done so. It is not the province of this Court to extend statutory language to individuals not included within the plain language of the statute. As this Court recently emphasized, "[w]ith specific regard to the Wyoming Governmental Claims Act, we have said that we should not 'enlarge, stretch, expand[,] or extend' the statutory language to include 'matters not falling within its express provisions.'" *Sinclair v. City of Gillette*, 2012 WY 19, ¶ 9, 270 P.3d 644, 646 (Wyo. 2012) (quoting *State v. Watts,* 2008 WY 19, ¶ 19, 177 P.3d 793 at 798 (Wyo. 2008)) (internal quotations omitted). Furthermore, in interpreting the Act, we have noted that a covered governmental entity "is liable for only those torts expressly recognized in that Act. ***Any invitation to add a particular tort to the statutory list must be addressed to that body***." *Hoff v. City of Casper-Natrona County Health Dep't,* 2001 WY 97, ¶ 32, 33 P.3d 99, 107 (Wyo. 2001) (emphasis added); *Harbel v. Wintermute,* 883 P.2d 359, 367 (Wyo. 1994) (explaining that the legislature, not the courts, must remedy any perceived unfair results under the Act). In light of this precedent, the district court erred in reading *Sharsmith* as implicitly waiving sovereign immunity against governmental entities for acts of ostensible or apparent agents.

---

[3]  There is nothing in the *Sharsmith* decision discussing whether the hospital in that case was a private hospital or a governmental entity. There is also nothing in the complaint or answer from that case (which are part of our record) discussing if St. John's Hospital is a governmental entity. The issue was never discussed in *Sharsmith*, nor raised in the underlying complaint or answer in that case. It appears that St. John's Hospital may have waived sovereign immunity by not raising the affirmative defense. *See Pickle v. Board of County Comm'rs*, 764 P.2d 262, 264 (Wyo. 1988). In any event, the district court based its conclusion that the hospital in *Sharsmith* was a governmental entity--not on *Sharsmith*--but on *Guier v. Teton County Hosp. Dist.*, 2011 WY 31, 248 P.3d 623 (Wyo. 2011), where this Court recognized that the Teton County Hospital District, d/b/a St. John's Medical Center is a governmental entity.

10

[¶30] Finally, Pfeifle proffers additional arguments supporting the district court's denial of the hospital's motion for partial summary judgment. Pfeifle argues that the hospital waived sovereign immunity by obtaining liability insurance that covered Phillips. Pfeifle further argues that she is an intended third-party beneficiary of the contract between the hospital and Anesthesia Associates, and that the Act does not provide governmental immunity for contract claims. Pfeifle made these same arguments below, but the district court did not address them in its decision letter.

[¶31] While this Court may ordinarily affirm the district court on any ground apparent in the record, we have declined to do so when the underlying issues involve complex factual and legal arguments that were never addressed by the district court. *Horse Shoe Land & Livestock v. Federal Land Bank*, 740 P.2d 936, 938 (Wyo. 1987). We decline in this case to analyze Pfeifle's alternative legal arguments concerning insurance coverage and third-party beneficiary contract coverage in the absence of a district court determination of these issues.[4] We believe it is best to allow the district court to consider these alternative arguments as it sees fit on remand, and to make findings and a record that will allow this Court to engage in a more meaningful review in the event of another appeal.

[¶32] We reverse and remand for further proceedings consistent with this opinion.

---

[4] The record indicates that Pfeifle did not plead a third-party beneficiary contract claim. Although we decline to specifically decide this issue, we recognize that a district court can rightfully decline to consider any issue not properly raised in the pleadings.