2007 WY 166

Annette METZ; Bonnie Horton;
and Pam Basile, Appellants
(Plaintiffs),

v.

LARAMIE COUNTY SCHOOL DISTRICT
NO. 1; Linda Willman; Tom Rooney;
and Jeff Conine, in their individual and
official capacities, Appellees (Defendants).

No. 06–159.

Supreme Court of Wyoming.

Oct. 23, 2007.

Representing Appellants: Bruce S. Asay of Associated Legal Group, LLC, Cheyenne, Wyoming.

Representing Appellees: David Evans and Brandi L. Monger of Hickey & Evans, LLP, Cheyenne, Wyoming. Argument by Ms. Monger.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] Annette Metz, Bonnie Horton and Pam Basile (appellants) appeal from an order granting summary judgment to Laramie County School District No. 1 (LCSD) on their claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of 42 U.S.C. § 1983 and sex discrimination in violation of 42 U.S.C. § 2000e–2. We reverse the summary judgment order with respect to the breach of contract and § 1983 claims and affirm the order on the claims of sex discrimination and breach of the implied covenant of good faith and fair dealing.

## ISSUES

[¶2] Appellants present the following statement of the issues:

[I]  Did the district court err in holding that a termination without notice and a hearing was compliant with the due process procedures required in 42 USC § 1983?

[II]  Did the district court err in dismissing Appellants' claim for breach of contract?

[III]  Did the district court err in dismissing Appellants' claim for Title VII sexual discrimination?

[IV]  Were the summary judgment motions deemed denied pursuant to Rule 6(c)(2) of the Wyoming Rules of Civil Procedure after ninety days?

[V]  Should the court recognize the importance of prior precedence in a companion case with exactly the same legal and factual basis?

[VI]  Were the court's findings on certain facts contrary to the evidence?

[VII]  Did the district court err in granting summary judgment on Appellants' claim for breach of the duty of good faith and fair dealing?

[VIII]  Did the district court err in finding that the plaintiffs were terminated

on a day other than when they were fired?

LCSD restates the issues as follows:

1. Does this Court have jurisdiction over Appellants' appeal?

2. [Were] the district court's March 2, 2006 decision letter and May 3, 2006 Order Granting Defendants' Motion for Summary Judgment proper?

3. Did the district court retain jurisdiction to rule on the summary judgment motion more than 90 days after its filing?

## FACTS

[¶ 3] Appellants were employed by LCSD as nutrition service workers at McCormick Junior High School (MJHS) in Cheyenne, Wyoming. A written agreement defined the terms of their employment. During their employment, LCSD established a policy allowing students who did not have money to pay for lunch to charge the cost of their lunch. MJHS placed a limit of $6.00 on the amount students could charge. If a student with a balance of $6.00 on his account attempted to charge another lunch, the nutrition service cashiers were directed to have the student speak with an administrator.

[¶ 4] On Thursday, December 16, 2004, a student in Ms. Horton's line during the first lunch period did not have money to pay for his lunch. His account showed a balance of over $6.00. In accordance with the policy, Ms. Horton sent him to speak with the school principal, Jeff Conine. The student told Mr. Conine he did not know his account was in arrears. Mr. Conine brought the student back to Ms. Horton, informed her that the student did not know his account was in arrears and said he was to be allowed to eat.

[¶ 5] After first lunch, Ms. Horton confirmed with Ms. Basile that the student had been told previously that his account was overdue. Ms. Horton went to Mr. Conine and informed him that the student knew he owed money. Meanwhile, Ms. Basile went to her supervisor, Maxine Titus, and told her what had happened after Ms. Horton sent the student to speak with Mr. Conine. Ms. Titus spoke with Ms. Horton and then decid-ed to speak with Mr. Conine. She asked him when he was going to start believing the employees instead of the students. According to Ms. Titus, Mr. Conine became angry, pointed his finger at her and hollered at her that she was "out of line" and no one was taking sides. After the confrontation, both Mr. Conine and Ms. Titus contacted Ms. Willman, the director of nutrition services for LCSD, and requested a meeting, which was scheduled for that afternoon.

[¶ 6] Ms. Titus was meeting with a parent and did not work during second lunch period. After second lunch, Ms. Basile, Ms. Metz, Ms. Horton and a couple of other employees decided they would not resume their work until their concerns about how they were being treated were addressed. They turned off the lunchroom lights and remained in the kitchen during the third lunch period. Several administrators, faculty members and other nutrition service employees served the students.

[¶ 7] Ms. Willman arrived at the school as the administrators and others were serving third lunch. Mr. Conine informed her generally what had happened. Ms. Willman asked the nutrition service employees to meet her in the break room. Mr. Conine and Tom Rooney, LCSD's director of support operations, were also present. Ms. Willman asked the appellants "what the hell is going on here?" and said they had better have a "damn good reason" for walking off the job. Ms. Basile responded that the administration did not "give a rat's ass" about them. Ms. Willman told Ms. Basile that she was fired and to leave. Ms. Basile left the break room but returned a few minutes later. Mr. Rooney said, "[Ms. Basile], you didn't understand. You are fired. Get out." Ms. Horton indicated she was not willing to work under conditions as they existed. Ms. Willman told Ms. Horton that her resignation was accepted. After the meeting in the break room, Ms. Willman told Ms. Metz that she was fired as well.

[¶ 8] The following day, Friday, December 17, 2004, John Lyttle, the assistant superintendent of human resources for LCSD, met with Mr. Conine, Ms. Willman and Mr. Rooney to discuss what had happened. Dur-

ing the meeting, Mr. Conine became aware that only Mr. Lyttle had the authority to terminate the appellants. After the meeting, Mr. Lyttle made telephone calls to the appellants, leaving messages for them indicating that he wanted to talk with them about what happened. Ms. Horton and Ms. Metz did not return his phone call. Ms. Basile called him back the following Monday, December 20, or Tuesday, December 21. She told him she could not meet with him that day. Mr. Lyttle said he had a letter for her but would hold it until they could meet. She tried twice without success to reach him and then received the letter in the mail.

[¶ 9] In separate letters dated December 21, 2004, to each of the appellants, Mr. Lyttle stated that Ms. Willman terminated them on December 16 for gross negligence and insubordination, both of which were grounds for immediate termination under the employment agreement. He advised them that their terminations were effective December 21, 2004. He also advised Ms. Metz and Ms. Basile that they had the right to file a grievance within thirty days. LCSD stated in its appeal brief that Mr. Lyttle did not similarly advise Ms. Horton because she had resigned.

[¶ 10] On March 28, 2005, Ms. Metz, Ms. Horton and Ms. Basile filed a complaint for wrongful termination in Laramie County District Court against LCSD, Ms. Willman, Mr. Conine and Mr. Rooney. They alleged claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of 42 U.S.C. § 1983 and violation of 42 U.S.C. § 2000e-2. In their factual allegations, the appellants claimed generally that the administrators were condescending and demeaning toward nutrition service employees, failed to keep them advised of events affecting their duties, ignored their complaints about a gas leak, and contributed to an intolerable and hostile work environment. They alleged that on the day which culminated in their terminations, the administrators treated them in an abusive, threatening and humiliating manner. They further alleged that their terminations were wrongful in that the administrators breached the progressive disciplinary provisions of the employment agreement and the duty of good

faith and fair dealing, violated their constitutional rights to free speech and due process and subjected them to a hostile work environment.

[¶ 11] LCSD answered the complaint and filed a motion to dismiss the claims for breach of contract, breach of the covenant of good faith and fair dealing and hostile work environment. Appellants responded with a memorandum in opposition to the motion and their own motion for summary judgment in which they claimed they were entitled to judgment as a matter of law because it was undisputed that they were terminated without a pre-termination hearing in violation of their contractual and constitutional rights. LCSD filed responses to the appellants' memorandum and motion and, on November 14, 2005, filed its own motion for summary judgment. On December 16, 2005, the district court held a hearing on the motions. Subsequently, the appellants notified the district court that the federal district court had recently issued a decision denying LCSD's summary judgment motion on claims their supervisor, Ms. Titus, had filed as a result of the termination of her employment with LCSD.

[¶ 12] On March 2, 2006, the district court issued a decision letter in which it granted LCSD's summary judgment motion. On March 13, 2006, the appellants filed a motion asking the court to reconsider its ruling on two grounds. First, they asserted the federal district court ruling denying LCSD's summary judgment motion in *Titus v. Laramie County School District No. 1,* U.S.D.C., D. Wyo., Case No 05–CV–098–D, was based on the same facts and the same law as their case and was binding on the state district court. Second, they argued LCSD's summary judgment motion was deemed denied under W.R.C.P. 6(c)(2) and *Paxton Resources, LLC v. Brannaman,* 2004 WY 93, 95 P.3d 796, 798 (Wyo.2004), when it was not decided within ninety days of filing.

[¶ 13] LCSD responded to the motion for reconsideration arguing that *Paxton* and Rule 6(c)(2) were not applicable to their summary judgment motion and that the *Titus* decision was not binding on the state district court. LCSD also asserted that the Wyo-

ming Rules of Civil Procedure do not authorize motions for reconsideration and, under *Plymale v. Donnelly*, 2006 WY 3, 125 P.3d 1022 (Wyo.2006), the motion was a nullity.

[¶ 14] On April 6, 2006, LCSD filed a motion asking the district court to enter an order on its summary judgment ruling. LCSD stated that more than ten days had elapsed since it had forwarded to appellants' counsel a draft order granting the motion for summary judgment and counsel still had not approved the order. LCSD also filed a W.R.C.P. 58[1] certificate stating that it had attempted to obtain opposing counsel's signature on the proposed order more than ten days before and counsel had not responded. The certificate advised that objections to the proposed order must be made within 10 days. The appellants did not object to the proposed order and, on May 3, 2006, the district court entered the order granting LCSD's summary judgment motion. Apparently, appellants' counsel was not served with a copy of the order.

[¶ 15] Six days later, the district court entered a notice setting a hearing on the appellants' motion for reconsideration for May 26, 2006. At LCSD's request, the hearing was continued to June 7, 2006. The hearing was held as scheduled and on June 9, 2006, appellants' counsel filed a motion requesting an additional fifteen days to file a notice of appeal. In the motion, counsel stated that he was not served with the order granting summary judgment and was not aware until the June 7 hearing that the order had been entered on May 3. By June 7, the thirty days for filing a notice of appeal from the summary judgment order had expired. Citing W.R.A.P. 2.01(a)(1), counsel asked for an extension.

[¶ 16] On June 12, 2006, the district court entered an order granting the appellants an extra fifteen days in which to file a notice of

appeal. Appellants filed their notice of appeal the same day.

## STANDARD OF REVIEW

[¶ 17] When reviewing an order granting summary judgment, we consider the record *de novo*. *Hincks v. Walton Ranch Co.*, 2007 WY 12, ¶ 7, 150 P.3d 669, 670 (Wyo.2007). Our review of orders granting summary judgment is governed by W.R.C.P. 56(c), which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We view the evidence in the light most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. *Hincks*, ¶ 8, 150 P.3d at 670. A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense. *Gillett v. White*, 2007 WY 44, ¶ 9, 153 P.3d 911, 914 (Wyo.2007).

## DISCUSSION

### 1. *Jurisdiction*

[¶ 18] As a preliminary matter, we address LCSD's claim that this Court lacks jurisdiction to hear this appeal because the appellants made no showing of excusable neglect to support extending the time for filing the notice of appeal as required by our appellate rules. W.R.A.P. 2.01 provides in pertinent part:

> (a) An appeal from a trial court to an appellate court shall be taken by filing the

---

1. W.R.C.P. 58 provides in relevant part:

   (a) Presentation.—... unless otherwise ordered by the court, written judgments or orders shall be presented to the court within 20 days after its decision is made known. Before submitting the judgment or order, the party drafting it shall seek to secure the written approval as to form of the other parties. If,

   within 10 days, approval as to form is not obtained, the party drafting the form of judgment or order may forward the original to the court and serve a copy on the other parties with a notice advising objections must be made within 10 days. If no written objection is timely filed, the court may sign the judgment or order.

notice of appeal with the clerk of the trial court within 30 days from entry of the appealable order.

(1) Upon a showing of excusable neglect, the trial court in any action may extend the time for filing the notice of appeal not to exceed 15 days from the expiration of the original time prescribed, provided the application for extension of time is filed and the order entered prior to the expiration of 45 days from entry of the appealable order;

* * * *

[¶ 19]   There is no dispute that the notice of appeal was filed more than 30 days after entry of the summary judgment order.   The district court entered the order on May 3, 2006, and the notice of appeal was filed on June 12, 2006, 40 days later.   The dispute concerns whether the claim by appellants' counsel that he did not receive a copy of the summary judgment order or know that it had been entered constitutes excusable neglect within the meaning of W.R.A.P. 2.01.   Citing *Ahearn v. Anderson–Bishop Partnership*, 946 P.2d 417 (Wyo.1997), LCSD argues it does not.

[¶ 20]   Mr. Ahearn filed a notice of appeal listing both defendants in the underlying action, a partnership and a bank, on the caption.   *Id.* at 421.   He served both of them with a copy of the notice of appeal.   The notice, however, referred only to the order granting summary judgment for the partnership.   In the meantime, unbeknownst to Mr. Ahearn, the district court had entered a second order granting summary judgment for the bank.   Mr. Ahearn discovered the second order months later and filed an amended notice of appeal, which the bank moved to strike as untimely.   This Court concluded the notice of appeal was untimely as to the bank and dismissed the bank from the appeal.   *Id.*

[¶ 21]   Mr. Ahearn sought relief in the district court by filing a W.R.C.P. 60(b) motion.   The district court found that the clerk's office had failed to comply with W.R.C.P. 77, which required the clerk to mail copies of all court orders to all parties.   Concluding that denial of relief would violate due process, the district court entered an order vacating the original summary judgment or-

der and entering a new order.   *Id.* Mr. Ahearn timely appealed from the new order.

[¶ 22]   The issue this Court was asked to consider was whether Rule 60(b) could be used to avoid the mandate of Rule 77, which provides in pertinent part:

(d) *Service of orders or judgments.—* Immediately upon entry of an order or judgment the clerk shall mail a copy thereof ... to every party who is not in default for failure to appear, and who has not in person or by attorney acknowledged receipt of a copy thereof.   * * * * *Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted by the Wyoming Rules of Appellate Procedure.*

[emphasis added.]   Mr. Ahearn claimed he was entitled to relief under Rule 60(b) because the clerk's office failed to comply with Rule 77.   This Court held that factor alone did not warrant Rule 60(b) relief.   *Ahearn,* 946 P.2d at 423.   We said:

Rule 60(b) is available in situations where a party does not learn of a judgment until after the time provided in W.R.A.P. 2.01(a)(i), but relief is limited to only those instances where the party has shown due diligence, or sufficient reason for the lack thereof, or other special circumstances.   Rule 60(b) was not intended as a means of enlarging ... the time for appeal except in compelling circumstances where justice requires that course.

Courts have uniformly held that Rule 77(d) bars [Rule 60(b) ] relief when the sole reason asserted for relief is the failure of a litigant to receive notice of the entry.

*Id.* (citations omitted).

[¶ 23]   *Ahearn* is distinguishable from the present case because in that case relief was sought under W.R.C.P. 60(b) after the 15 days provided for in W.R.A.P. 2.01 had expired and the question for determination was whether relief was available under Rule 60(b) when the reason for the untimely notice of appeal was the clerk's failure to serve the order on the appealing party as required by Rule 77(d).   We found the answer to that

question in the express language of Rule 77(d) stating that the clerk's failure to comply with the rule does not extend or authorize the district court to extend the time for appeal, and in our prior interpretations of Rule 60(b) limiting relief to instances where due diligence or other special circumstances are shown.

[¶ 24] Here, relief was sought under W.R.A.P. 2.01 within the 15 days provided. The question for determination is whether the appellants made a showing of excusable neglect within the meaning of Rule 2.01. W.R.C.P. 77(d) does not come into play because the portion of the rule disallowing extensions of time based upon the clerk's failure to comply specifically states "except as provided in the rules of appellate procedure." Likewise, Rule 60(b) is not at issue because the appellants did not seek relief in the district court on the basis of that provision.

[¶ 25] In *Crossan v. Irrigation Dev. Corp.*, 598 P.2d 812, 813 (Wyo.1979), in the context of W.R.A.P. 2.01, the Court said:

> Excusable neglect is measured on a strict standard to take care of genuine emergency conditions, such as death, sickness, undue delay in the mail and other situations where such behavior might be the act of a reasonably prudent person under the circumstances.

More recently, in *Venable v. State*, 854 P.2d 714, 718 (Wyo.1993), the Court stated:

> [T]he excusable neglect standard can be met only in extraordinary cases where injustice would otherwise result. The appellate court normally accords great deference to the district court's ruling. * * * Because of the wide array of factual situations, the decisions one finds are useful more as illustrations of the judicial problem rather than as a talisman to interpreting "excusable neglect." In the final analysis, each case stands on its own facts since the district court's exercise of discretion is at the heart of the case.

[¶ 26] In the present case, the facts upon which the district court relied in granting the extension included: appellants' counsel claimed not to have received notice of the entry of the May 3 summary judgment order; counsel for LCSD was unable to verify that his office sent appellants' counsel a copy of the order as required by district court procedure; a hearing was set for May 26 on the motion for reconsideration, within the time for filing a notice of appeal, however LCSD's counsel requested a continuance; the hearing was rescheduled for June 7, past the time for filing a notice of appeal; upon learning on June 7 that an order had been entered, appellants' counsel moved for an extension; the oral motion was followed by a written motion supported by the affidavit of appellants' counsel's secretary, in which she averred that the summary judgment order was first received in their office by fax from the school district's counsel on June 7.

[¶ 27] Giving effect to our prior pronouncements that each case stands on its own facts and the district court's exercise of discretion is the heart of the matter, we are unable to find from these facts that the district court abused its discretion in granting the extension. LCSD's counsel could not verify that he sent a copy of the order to appellants' counsel as required by district court procedure. The hearing on the motion for reconsideration was originally scheduled within the 30 days for filing a notice of appeal. A reasonable inference can be made that if the hearing had been held as scheduled, appellants' counsel would have realized then that the order had been entered and filed a notice of appeal and no extension would have been necessary. Instead, LCSD's counsel asked for a continuance and the hearing was rescheduled for June 7, past the 30 day period for filing a notice of appeal. Upon realizing the district court had entered an order, appellants' counsel requested an extension of time to file a notice of appeal. The request was made within the 15 days provided for in Rule 2.01. Given appellants' counsel's claim that he did not receive notice of the summary judgment order and LCSD's inability to verify that it forwarded him a copy, the district court reasonably could have concluded excusable neglect was shown as required by Rule 2.01. The district court did not abuse its discretion in granting the 15 day extension.

## 2. *Due Process*

[¶ 28] The federal statute under which the appellants brought their due process claim, 42 U.S.C. § 1983 (Cum.Supp. 2001), provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

This statute creates a federal cause of action for damages to vindicate violations of federal law committed by persons acting "under color of state law." *Garnett v. Coyle*, 2001 WY 94, ¶ 17, 33 P.3d 114, 120 (Wyo.2001). To establish a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate that (1) he has been deprived of a right secured by the Constitution and laws of the United States; and (2) the alleged deprivation was committed by a person acting under color of state law. *Id.* State courts have concurrent jurisdiction with the federal courts over § 1983 actions. *Van Riper v. Oedekoven*, 2001 WY 58, ¶ 4, 26 P.3d 325, 326 (Wyo.2001).

[¶ 29] It is undisputed that, by virtue of the LCSD nutrition service employees' agreement, appellants had a constitutionally protected property right in their continued employment with LCSD entitling them to due process prior to being terminated. In their complaint, the appellants claimed that their due process rights were violated when they were terminated without written notice and a pre-termination hearing. The district court concluded there was no due process violation because the appellants were not officially terminated until December 21, 2004, and, prior to that date, LCSD attempted to afford them due process by giving them an opportunity to tell their side of the story. The district court concluded that the appellants were given the opportunity to be heard and chose not to avail themselves of that opportunity. Therefore, the district court

concluded, LCSD did not deprive them of the opportunity to be heard.

[¶ 30] On appeal, the appellants assert the district court misconstrued the facts in order to find for LCSD. They contend the evidence was undisputed that they were fired without notice or a hearing on December 16, the day they refused to serve lunch. LCSD argues the appellants' due process rights were not violated because they were given two chances to tell their side of the story prior to their official termination on December 21—first on December 16 when Ms. Willman asked them to explain their actions and again the next day when Mr. Lyttle attempted to contact them. LCSD contends these pre-termination opportunities to be heard satisfied due process because a full post-deprivation hearing was also available to the appellants by virtue of the grievance procedure. LCSD argues this was all that was required to satisfy due process under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

[¶ 31] In *Loudermill*, the United States Supreme Court reaffirmed the rule that due process requires an opportunity for a hearing before an individual is deprived of any significant property interest. *Id.* at 542, 105 S.Ct. 1487. The Court described the pre-termination hearing as requiring oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. *Id.* at 546, 105 S.Ct. 1487. Applying this test, the Court held, in the first of the two consolidated cases before it, that a security guard employed by the board of education was deprived of due process when he was dismissed without a pre-termination hearing for failing to disclose on his job application a prior felony conviction. In the second case, the Court held a school bus mechanic who was fired for failing an eye examination without a pre-termination hearing was deprived of due process.

[¶ 32] In both cases, the Court emphasized that a pre-termination opportunity to explain what happened and why termination should not result was essential. "The opportunity to present reasons, either in person or

in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* at 546, 105 S.Ct. 1487. Moreover, "[t]he only meaningful opportunity to invoke the discretion of the decision maker is likely to be before the termination takes effect." *Id.* at 543, 105 S.Ct. 1487. The availability of procedures for a full post-termination hearing was also an important factor in the Court's decision. "We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures...."

[¶ 33] This Court has applied *Loudermill* when considering due process violation claims in termination cases involving public employees. In *Lucero v. Mathews*, 901 P.2d 1115 (Wyo.1995), a deputy sheriff was terminated because he allegedly mishandled two criminal matters. The sheriff moved for summary judgment on the grounds that the law was not clearly established that the deputy could not be terminated without notice and an opportunity to be heard. We held the law was clearly established that:

A nonprobationary ... public employee is entitled to written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. This pretermination hearing opportunity, which necessarily includes notice and a hearing, is not only a by-product of § 18-3-611 [the Wyoming statute defining the conditions required for removal of deputy sheriffs], but is also a function of constitutional law. The due process clause of the United States Constitution requires such notice and hearing, and we point out that Art. 1, § 6 of the Wyoming Constitution also affords equivalent protection to the nonprobationary public employee.

The notice of which we speak is the same kind of notice that is due any public employee who has a property right in continued employment, which includes tenured teachers, municipal judges, and any other nonprobationary public employee. The required notice must afford the public employee "a reasonable opportunity to know the claims of the opposing party and

to meet them." The notice must contain adequate and specific notice of the charges for which the employee is being terminated.

\* \* \* \*

The opportunity to be heard before a public employee's property interest may be taken away goes hand in hand with the notice he must receive. Constitutional due process requires that a public employee be afforded a hearing wherein he may respond to the charges that are contained within the notice before his constitutionally protected property interest may be terminated. This necessarily means that the public employee must be given a real and meaningful opportunity to respond to every charge or allegation that is being brought against him and which will be used as a cause for his termination. If the public employee has not been given an opportunity to respond to every allegation which is used against him as a cause for termination of his property interest, then he has not been given a real and meaningful opportunity to be heard and, thus, he has been deprived of constitutionally protected property without due process of law. *Id.* at 1120–21 (citations omitted).

[¶ 34] A year later, in *Mondt v. Cheyenne Police Dep't*, 924 P.2d 70 (Wyo.1996), we considered the requirements of due process in the context of a police officer who was suspended for unsatisfactory work performance. On a certified question from the district court asking what process the police officer was due before he was suspended, we said he was entitled to written notice of the charges against him, knowledge of the basis of those charges and, in the case of the denial of the allegations, an effective opportunity to respond either in person or in writing to an impartial decision maker. *Id.* at 82.

[¶ 35] More recently, in *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 17, 88 P.3d 481, 488 (Wyo.2004) we reiterated these principles as follows:

[P]ublic employees must be given notice sufficient to afford them a reasonable opportunity to know the claims of the opposing party and meet them. "The notice

must contain adequate and specific notice of the charges for which the employee is being terminated." The notice must be sufficient to afford the employee "a real and meaningful opportunity to respond to every charge or allegation brought against him as a basis for termination." Absent an opportunity to respond to every allegation that is the basis for termination, a public employee has not been given a real and meaningful opportunity to be heard and is deprived of due process.

[¶ 36] Before considering the substance of the appellants' due process claim in light of *Loudermill* and our state court decisions, we address the district court's finding that the appellants were terminated effective December 21, the date the letters were sent to them, rather than December 16, 2004, the day Ms. Willman fired them. Viewing the record *de novo* and in the light most favorable to the appellants, we cannot agree with that finding. Evidence was presented that all of those present in the break room on December 16, with the possible exception of Mr. Rooney, believed that Ms. Willman terminated the appellants at that time. There was testimony indicating that Ms. Willman had the authority only to recommend termination, not to actually terminate employees, however, Ms. Willman did not tell the appellants she was going to "recommend" their terminations. Rather, she told Ms. Metz and Ms. Basile that they were fired. She also accepted Ms. Horton's resignation although Ms. Horton did not say she was resigning. Ms. Willman testified that "it never crossed her mind" that her actions would not be supported by Mr. Lyttle.

[¶ 37] Given this testimony, the termination arguably was a "done deal" on December 16 despite Ms. Willman's lack of authority to unilaterally terminate employees. Mr. Conine viewed it that way, testifying that from his perspective the appellants were fired on December 16. Not surprisingly, Ms. Basile testified that she believed she was fired on December 16. When she spoke with Mr. Lyttle the following Monday, he did not tell her that Ms. Willman did not have the authority to fire her and could only recommend her termination nor did he relay that

information to Ms. Horton or Ms. Metz. We hold that the record does not support a finding that, as a matter of law, the appellants' termination was effective on December 21.

[¶ 38] Turning our attention back to the substance of the appellants' due process claim, we hold that genuine issues of material fact exist as to whether, prior to being deprived of their property interest in their employment with LCSD, the appellants received sufficient notice and opportunity to be heard to satisfy due process. Viewed in the light most favorable to appellants, the evidence showed questions of fact as to whether, at the time they were told they were terminated, appellants had sufficient notice of the charges and evidence against them. Additionally, the evidence demonstrated the existence of factual questions as to whether they were afforded a meaningful opportunity to tell their side of the story. As the United States Supreme Court stated in *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487, "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Moreover, the only meaningful opportunity an employee has to influence the decision is before it is made. *Id.* at 543, 105 S.Ct. 1487. Evidence was presented from which a jury might conclude that once Ms. Willman uttered the words "you are fired," meeting with Mr. Lyttle would have been futile. Evidence was also presented from which a jury might conclude that when Ms. Basile spoke with Mr. Lyttle the following Monday, he in essence acknowledged that she was terminated the week before and was simply following procedure before putting the official termination letter in the mail.

[¶ 39] Conversely, evidence was presented from which a jury might conclude that the appellants received adequate notice and an opportunity to be heard because they really were not terminated until December 21 and by then Mr. Lyttle had called them and tried to meet with them to hear their side of the story, thereby affording them an opportunity for a pre-termination hearing. While evidence was also presented showing that by that time, the appellants had been told their

employment was terminated, and Mr. Lyttle did not advise them otherwise or tell them Ms. Willman's recommendation was subject to review, this evidence only further demonstrates the existence of factual questions about whether the appellants were given a meaningful opportunity to be heard before they were terminated. We reverse the district court's order granting summary judgment to LCSD on the § 1983 claim.

### 3. *Breach of Contract*

[¶ 40] The district court granted LCSD's summary judgment motion on the appellants' breach of contract claim on the ground that they failed to exhaust the grievance procedures contained in their employment agreement. The appellants claim they were not required to file a grievance in order to maintain their breach of contract claim in district court. They claim the grievance procedures were permissive rather than mandatory.

[¶ 41] In addressing this issue, we note first that LCSD did not claim on summary judgment that the appellants' failure to follow the grievance procedures barred their breach of contract claim. Rather, LCSD contended the appellants' failure to follow the grievance procedures precluded their claims for sexual discrimination under Title VII and violation of due process under 42 U.S.C. § 1983.[2] The district court, however, concluded the absence of a grievance barred the breach of contract claim.

[¶ 42] The relevant provisions of the grievance procedure contained in the agreement between LCSD and the nutrition service employees provided:

*ARTICLE 16—GRIEVANCE PROCEDURE*

16.1 This grievance procedure shall provide for the equitable settlement of disputes in a timely manner, without the fear of reprisals. Earnest efforts shall be made, by all parties, to resolve disputes at the lowest level. At all times, the focus shall be on problem solving.

16.2 Definitions/Procedures:

A. Grievance: A dispute arising from interpretations or applications of contract terms, District policies and/or regulations.

B. Grievant: Employee, or group of employees, or WPEA representing employees filing grievance.

C. Class Action Grievances: Grievances directly affecting two (2) or more grievants shall be filed at Level II.

D. Sexual Harassment Grievances: Sexual harassment grievances shall be filed at Level II.

E. Written Grievance: The written grievance shall include the following:

1. A description of the grievance

2. Time-frame or date

3. Identity of the party(ies) involved

4. The provision of Board policy, regulations or negotiated agreement in dispute

5. A suggested remedy

* * * *

H. Time limits:

1. Filing: The grievance shall be presented within thirty (30) contract days of actual knowledge of the dispute.

2. Resolution: At the end of each time limit, the grievance shall automatically proceed to the next level, if the process has not been completed.

* * * *

16.3 Level I

Time Limit: Five (5) days to complete after receipt of written grievance.

Grievant presents immediate supervisor with a written grievance. A meeting shall be held between the grievant and the supervisor, with every effort made to

---

**2.** It is more than well-settled that a plaintiff under 42 U.S.C. § 1983 need not exhaust his administrative remedies before filing suit in federal court. *Hopkins v. Oklahoma Pub. Emples. Retirement Sys.*, 150 F.3d 1155, 1159 (10th Cir. 1998), citing *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 683 (10thCir.1988) (reinstating a § 1983 suit that had been dismissed for failure to exhaust administrative remedies). This rule is equally applicable in state court. *Leach v. N.M. Junior College*, 132 N.M. 106, 45 P.3d 46 (App.Ct. 2002).

resolve the grievance by consensus. The outcome of this meeting shall be:

* Resolution of the grievance; or

* Immediate elevation to Level II; or

* Withdrawal of the grievance by the grievant.

* * * *

16.4 Level II

Time Limit: Ten (10) days to complete after receipt of the written statement elevating to Level II.

Grievant and/or supervisor presents the grievance to the Superintendent. Within two (2) days, the Superintendent shall inform the grievant of the District Level Administrator assigned the grievance. A meeting shall be held between the grievant, supervisor, and District Level Administrator with every effort made to resolve the grievance by consensus. The outcome of this meeting shall be:

* Resolution of the grievance; or

* Immediate elevation to Level III; or

* Withdrawal of the grievance by the grievant.

* * * *

16.5 Level III

Time Limit: Ten (10) days to complete the Board hearing after receipt of the written statement elevating to Level III.

The grievant and/or Superintendent present[s] the grievance to the Chairman of the Board of Trustees. A hearing shall be held to resolve the grievance. The decision shall be rendered by the action of the Board at the next scheduled Board meeting following the hearing.

[¶ 43] According to the plain language of Section 16.2.B., the grievance procedure applied to LCSD employees. Upon being terminated, the appellants were no longer employees of LCSD. However, the grievance procedure was made applicable to appellants after their discharge by the following provision contained in the discipline and discharge provisions of the agreement:

20.5 Any employee ... who considers that he has been discharged or disciplined without proper cause ... shall

have the right to appeal such discharge in accordance with the provisions of the grievance procedure set forth in this agreement.

[¶ 44] In its decision letter, the district court focused on the language in Article 20.5, giving discharged employees the right to appeal, and the language in Article 16.1, providing that the "grievance procedure shall provide for the equitable settlement of disputes" and "earnest efforts shall be made, by all parties, to resolve disputes at the lowest level." The district court acknowledged: "The mandatory language of the grievance section is in apparent discord with the non-mandatory language of termination appeals." The district court asked: "What is the meaning of the contract, given these conflicting provisions?" Despite the ambiguity, the district court applied the rules of contract interpretation to conclude the reasonable construction of the agreement was that the grievance procedures were mandatory.

[¶ 45] Normally, the construction and interpretation of a contract is for the court as a matter of law. *Hoff v. City of Casper–Natrona County Health Dept.*, 2001 WY 97, ¶ 16, 33 P.3d 99, 103 (Wyo.2001). If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact. *Id.* Where the meaning and effect of an employment relationship is a mixed question of law and fact, we have held that summary judgment is not appropriate. *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1259 (Wyo.1993).

[¶ 46] In concluding that the grievance procedures were mandatory despite the apparent ambiguity, the district court relied on *Bryant v. Pacific Power & Light*, 701 P.2d 1165 (Wyo.1985), where this Court considered a collective bargaining agreement containing the following language: "Employee ... shall file with the Company a written grievance." *Id.* at 1166. In *Bryant*, the employee conceded that ordinarily, "access to the courts is barred to one who fails to exhaust *mandatory* grievance procedures in a collective-bargaining agreement." *Id.* at

1167 (emphasis added). Because of the mandatory language requiring an employee to file a grievance and because Mr. Bryant did not do so, this Court held summary judgment was appropriate on his breach of contract claim.

[¶ 47] In contrast to the agreement in *Bryant*, the appellants' employment agreement did not contain clear language requiring discharged employees to file a grievance. Nor did it contain any language suggesting that a discharged employee must comply with the grievance procedures or be barred from judicial relief. Pursuant to Article 20.5, the appellants had the "right" to appeal their discharge by filing a grievance in accordance with the procedures contained in Article 16.

[¶ 48] The plain and ordinary meaning of the word "right" as used in Article 20.5 is, to paraphrase Merriam–Webster's On-line Dictionary: something to which one has a just claim; a power or privilege to which one is justly entitled (such as the right to vote). In the context in which it appears in Article 20.5, the word "right" does not suggest a grievance was mandatory. The provision does not state that a discharged employee "must" or "is required" to file a grievance or, as in *Bryant*, "the employee shall file a grievance." Instead, the agreement provides an employee "shall have the right" to file a grievance, a usage suggesting a choice on the part of the employee. Had LCSD intended to make the filing of a grievance mandatory or to require employees to exhaust the grievance procedures or be barred from filing a claim in court, it could have clearly stated that intent in the agreement. We hold that the appellants' failure to appeal their discharge by filing a grievance did not preclude them from filing a breach of contract claim in court.

[¶ 49] In reaching this result, we are aware of the statement in *Glover v. State*, 860 P.2d 1169, 1171 (Wyo.1993), cited by the district court, that "the decision to decline jurisdiction because a party failed to exhaust his administrative remedies is vested in the sound discretion of the trial court." *Glover*, however, is distinguishable from the present case and the language cited by the district

court in its summary judgment order is not applicable under the present facts.

[¶ 50] *Glover* involved a discharged state employee governed by the state personnel rules and the Wyoming Administrative Procedures Act (WAPA). He filed an action in district court without having exhausted the procedures available to him in the personnel rules and state statutes. In affirming the district court's decision to decline jurisdiction to consider his termination claims, this Court concluded that the intent of the personnel rules was to place exclusive jurisdiction with the state department of administration and information until the available administrative procedures were exhausted. The Court reached this result based on Wyo. Stat. Ann. § 16–3–114(a) (Michie 1990), which expressly provided that judicial review was available only after the administrative remedies were exhausted, and the personnel rules which provided that the hearing authority had original jurisdiction in all hearings involving employee dismissals. *Glover*, 860 P.2d at 1172–73.

[¶ 51] The quotation from *Glover* the district court relied on in appellants' case came from *Union Pacific Resources Company v. State*, 839 P.2d 356, 366 (Wyo.1992). *Union Pacific* involved a taxpayer's direct appeal to district court from county and state tax assessments. We held the taxpayer was required to exhaust administrative remedies before seeking judicial review of the tax assessments. We reached this result because, pursuant to the Wyoming Constitution, the state board of equalization was given jurisdiction to hear appeals from county and state tax determinations. Given the extensive and important administrative structure for handling review of tax assessments, we concluded the district court properly exercised its discretion in declining jurisdiction until the administrative remedies were exhausted.

[¶ 52] As we said in *Glover*, 860 P.2d at 1171, "the exhaustion doctrine applies where an agency alone has been granted or found to possess exclusive jurisdiction over the case." The purpose of the doctrine then is to avoid premature interruption of the administrative process where the agency has been created to apply a statute in the first

instance. *Id.* The doctrine does not apply in the present case because there is no agency created to apply a statute in the first instance and the LCSD nutrition service employees' agreement does not indicate a clear intent to make the grievance procedure mandatory, to give LCSD exclusive jurisdiction over employment disputes, or to bar judicial remedies. Under these circumstances, in contrast to the situations in *Glover* and *Bryant,* the question of whether the grievance procedures were mandatory was to be determined by applying the usual rules of contract interpretation. Giving the words used in the agreement their plain and ordinary meaning, we hold the appellants were entitled, but not required, to file a grievance after they were terminated. Their decision not to file a grievance did not bar their claim in district court.

### 4. *Sex Discrimination*

[¶ 53] The district court held that the appellants failed to present a genuine issue of material fact on their claim for sex discrimination under 42 U.S.C. § 2000e. More specifically, the district court concluded that the appellants' evidence of sexual harassment and a hostile work environment consisted almost exclusively of complaints made by other employees; only one such complaint came from a nutrition service employee. The district court further concluded the appellants presented no evidence that the alleged harassment created an abusive working environment.

[¶ 54] Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). The United States Supreme Court has made clear that the phrase "terms, conditions, or privileges of employment" reflects a congressional intent "to strike at the entire spectrum of disparate treatment of men and women in employment," including hostile or abusive work environments. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct.

367, 126 L.Ed.2d 295 (1993), citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). When the workplace is permeated with discriminatory intimidation, ridicule, and insult of sufficient severity or pervasiveness to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated. *Harris,* 510 U.S. at 21, 114 S.Ct. 367. The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status.

[¶ 55] Appellants claim on appeal that they presented sufficient evidence of unwelcome harassment. They cite to a student conduct log detailing incidents of unacceptable language and behavior by students in 2004 and 2005. The log is not included in the record on appeal. They further cite to testimony concerning two incidents where students grabbed each other's breasts and crotches while waiting in the lunch line and one incident where a student called Ms. Horton a "f——ing b——." Other than this testimony, the appellants present only unsupported, conclusory assertions such as: the students were allowed to treat employees in a demeaning way; the administration allowed a hostile environment to continue because it did not properly supervise the students; the incidents of profane language and obscene behavior were constant and created an abusive work environment; and, because appellants were female and worked in nutrition services, the administration ignored their complaints.

[¶ 56] We agree with the district court's conclusion that the appellants' assertions did not establish a genuine issue of material fact on their Title VII claim. We will not consider evidence not contained in the record and the only other evidence of an abusive environment, i.e. the testimony concerning the two incidents of student behavior in the lunch line and the student using profanity toward Ms. Horton, are not sufficient to show a pervasively abusive environment. Additionally, the appellants presented no evidence that the student behavior about which they complained was gender based. To the contrary, the evidence suggested that the

student behavior occurred regardless of the gender of the employees present.

### 5. *The Deemed Denied Rule*

[¶ 57] Citing W.R.C.P. 6(c)(2) and *Paxton*, 2004 WY 93, 95 P.3d 796, Appellants claim LCSD's summary judgment motion was deemed denied when the district court had not entered an order within 90 days after the motion was filed. Because the motion was deemed denied, they assert, the district court erred in not allowing the case to go to trial.

[¶ 58] The version of W.R.C.P. 6(c)(2) in effect in 2005–2006 provided:

A request for hearing may be served by the moving party or any party affected by the motion within 30 days after service of the motion. Absent a timely request for hearing the court may, in its discretion, determine the motion without a hearing. A motion not determined within 90 days after filing shall be deemed denied. A party whose motion has been deemed denied shall have 10 days after the effective date of such denial to serve such pleadings or other papers, if any, as may be required or permitted.

Addressing this rule in *Paxton*, we held that post-trial motions left undetermined 90 days after filing were deemed denied. In reaching that result, we said:

The present version of the rule ... covers motions for judgment, motions to amend or make additional findings of fact, motions to alter or amend a judgment, and motions for new trial, once again broadening the application of the "deemed denied" principle. Further, the present rule sets the "deemed denied" date at ninety days after filing of the motion and contains no provision for continuance, which indicates a firm commitment to the rule's purpose of preventing delay in the determination of post-trial motions.

*Paxton*, ¶ 11, 95 P.3d at 800. Thus, we made clear in *Paxton* that the deemed denied rule applied to *post-trial* motions not ruled upon within 90 days of filing.

[¶ 59] Subsequently, in *Mueller v. Zimmer*, 2005 WY 156, 124 P.3d 340 (Wyo.

2005), we held that the lapse of 90 days from the filing of a summary judgment motion did not deprive the district court of jurisdiction to decide the motion. We distinguished between summary judgment orders entered more than 90 days after filing, like the one at issue in *Mueller*, and orders on post-trial motions, such as those at issue in *Paxton*. The district court loses jurisdiction to decide the latter after 90 days but retains jurisdiction to decide the former. We hold that the district court retained jurisdiction to enter its summary judgment order after 90 days had expired.

### 6. *Federal Court Ruling*

[¶ 60] Appellants claim that it was inequitable and contrary to the doctrines of estoppel and law of the case for the state district court to reach a different result than the federal court reached in *Titus v. Laramie County School Dist. No. 1*, which they assert involved "exactly the same legal and factual basis" as their state court case. LCSD responds by asserting that state courts are not bound by federal court rulings and, given the substantial factual and legal differences in the two cases, the federal court ruling had little bearing on the state court case.

[¶ 61] From the record before us, it is impossible to determine whether *Titus* involved the same legal and factual basis as the instant case. The appellants assert without evidentiary support that it did; LCSD asserts without evidentiary support that it did not. Even assuming the same facts and legal basis, however, while we consider relevant federal precedent, we are not bound by it. *Lovato v. State*, 901 P.2d 408, 411 (Wyo. 1995). The appellants' contention that the state district court was bound by the federal court decision is without merit.

### 7. *Specific District Court Finding*

[¶ 62] Appellants claim the district court incorrectly found that they refused to serve lunch on the day they were terminated even though their supervisor, Ms. Titus, had arranged for a meeting that afternoon with the administration to discuss their concerns. They take issue with the following statement in the district court's decision letter:

The supervisor, Ms. Titus [on] behalf of [appellants], Director of Food Services, Ms. Willman and Mr. Conine, the principal, had previously scheduled a meeting for 1:30 or 2:00 p.m. to discuss the issue. Plaintiffs did not even await the outcome of the scheduled meeting before their sit-down strike. Thus, Plaintiffs failed not only to pursue the grievance procedure but to even await the informal attempt to resolve the dispute "at the lowest level."

We find nothing in the record to support a finding that the appellants knew about the scheduled meeting. However, our holding that genuine issues of material exist for trial means the parties will have the opportunity to present evidence on the issue. It is unnecessary for this Court to address the matter further.

## 8. *Implied Covenant of Good Faith and Fair Dealing*

[¶ 63] In its decision letter, the district court stated:

As a matter of law, [LCSD, Mr. Conine, Mr. Rooney and Ms. Willman] have immunity from the [appellant]s' claim for breach of [the implied covenant of] good faith and fair dealing under the Wyoming Governmental Claims Act (WGCA).

A claim for breach of good faith and fair dealing is an action in tort. *Hoff v. City of Casper–Natrona County Health Dept.*, 33 P.3d 99, 106 (Wyo.2001).

Although the employment relationship is based on contract and provides the setting within which the parties interact with each other, it is that interaction which truly forms the basis of the tort claim on which the employee seeks a remedy. It is more accurate to say that the tort claim arises from the employment contract setting, but it is based on alleged tortious conduct, not on the contract.

The WGCA states, "a governmental entity and its employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112 and limited by W.S. 1–39–121."

Therefore, because breach of good faith and fair dealing is not enumerated in one of the WGCA's specific exceptions [LCSD] has immunity from the Plaintiffs' claim.

[¶ 64] The appellants contend the district court erred in granting LCSD's summary judgment motion on their claim for breach of the implied covenant of good faith and fair dealing because, first, LCSD did not provide competent argument supporting its motion as to the claim and, second, the WGCA provides that the liability of an entity is extended to the extent of its insurance coverage. Because LCSD purchased insurance coverage for employment claims, the appellants assert, the claim for breach of the implied covenant is covered. LCSD responds that the district court correctly held that it is immune from liability for any tort except as provided by the WGCA, breach of the implied covenant is a tort that does not fall within any of the exceptions; therefore, it is immune from the claim. LCSD further asserts that its insurance policy does not cover a tort claim for breach of the duty of good faith and fair dealing; therefore, it is immune from liability for the tort as provided by the WGCA.

[¶ 65] We held in *Hoff v. City of Casper–Natrona County Health Dep't*, 2001 WY 97, ¶ 32, 33 P.3d 99, 107 (Wyo.2001), that a state employee's claim for breach of the implied covenant of good faith and fair dealing was barred by the WGCA. We said:

Wyo. Stat. Ann. § 1–39–119 does not enumerate [the tort of breach of the implied covenant] and cannot serve as an exception to immunity. The legislature has clearly stated in plain language in the Act the public policy that a covered governmental entity is liable for only those torts expressly recognized in that Act.

Because the WGCA does not except the tort from the general rule of immunity, LCSD has immunity from the claim unless, as appellants maintain, it waived its immunity in accordance with Wyo. Stat. Ann. § 1–39–118(b) (LexisNexis 2007) by purchasing insurance coverage for employment claims.

[¶ 66] Section 1–39–118(b) provides:

A governmental entity is authorized to purchase liability insurance coverage covering any acts or risks including all or any

portion of the risks provided under this act. Purchase of liability insurance coverage shall extend the governmental entity's liability as follows:

(i) If the governmental entity has insurance coverage either exceeding the limits of liability as stated in this section or covering liability which is not authorized by this act, the governmental entity's liability is extended to the coverage;

Selected provisions of LCSD's liability insurance policy are contained in the record. Among those provisions is an exclusion from coverage for:

(g) Injury to:

(1) Any person arising out of:

* * *

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions including, but not limited to ... discipline, ... harassment, ... or discrimination directed at that person;

Assuming there is no other provision in the policy to the contrary, the insurance policy did not cover liability for the appellants' claims and did not waive LCSD's immunity from their claims.

## CONCLUSION

[¶ 67] Genuine issues of material fact exist as to whether the appellants were denied notice and a meaningful pre-termination hearing as required by due process. Therefore, we reverse the district court's summary judgment ruling on their § 1983 claim. We also reverse the district court's order on the breach of contract claim because we conclude as a matter of law the employment agreement did not require appellants to file a grievance after they were terminated.

[¶ 68] No genuine issues of material fact exist on the appellants' sex discrimination / hostile work environment claim and we affirm the summary judgment on their Title VII claim. We also affirm the summary judgment on their claim for breach of the implied covenant of good faith and fair deal-

ing because, from the record before us, it appears LCSD is immune from liability.

[¶ 69] Affirmed in part, reversed in part.